DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellants, Melody M. and Edward M., Sr., and granted permanent custody of their children, Edward M., Jr., and Timothy M. to appellee, Lucas County Children Services ("LCCS"). Appellants now challenge the trial court's judgment through the following assignments of error:
 {¶ 2} "First Assignment of Error
 {¶ 3} "In a permanent custody trial, did the court err in denying a request for continuance for a hospitalized defendant?
 {¶ 4} "Second Assignment of Error
 {¶ 5} "Does clear and convincing evidence support the court's ruling?
 {¶ 6} "Third Assignment of Error
 {¶ 7} "Did the court err in determining the best interest of the children without considering all the required factors?"
 {¶ 8} Appellants are the natural parents of Edward M., Jr., born in 1992, and Timothy M., born in 1994. A third child, James, was born to appellants in 1998. James was born three months premature and has severe special needs. In 1999, LCCS filed a complaint in dependency and neglect in the matter of James. Appellants acknowledged that they had difficulty meeting James' needs, James was found to be dependent and legal custody of him was awarded to a relative.
 {¶ 9} On April 9, 2002, Edward, Sr., took Timothy to Riverside Hospital with facial injuries. It was subsequently determined that Timothy had been on the trunk of a car while his father was driving it and he fell off. It was also determined that Edward, Sr., had been drinking at the time he was driving the car and did not realize that Timothy was on the car. While at the hospital, Edward, Sr., appeared to be under the influence of alcohol. The police were contacted and Edward, Sr., was arrested and charged with child endangering and the children were placed with LCCS. Melody was working at the time of the incident. The next day, the lower court issued an ex parte order ordering LCCS to immediately take the children into shelter care custody.
 {¶ 10} On April 11, 2002, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing with regard to Edward, Jr., and Timothy. In addition to the facts set forth above, the complaint alleged that appellants had ongoing problems maintaining a clean and safe home, that the home was frequently dirty with animal feces on the floors and dirty clothes and garbage scattered and piled throughout the home. The complaint further alleged that LCCS had received several referrals since 1997 concerning the conditions in the home and that appellants would clean up the home only to have the conditions deteriorate again after LCCS was no longer involved. Emergency temporary custody was then awarded to LCCS and the children were placed with their paternal great-aunt.
 {¶ 11} The goal of the original case plan prepared in this case, which was filed with the trial court on May 14, 2002, was that the children be returned to their parents by April 11, 2003. The major components of the case plan required appellants to attend parenting classes, complete diagnostic assessments and follow all recommendations, and maintain a clean home. In addition, the plan required Edward, Sr., to complete a substance abuse assessment and follow all recommendations. At a magistrate's hearing of May 23, 2002, appellants both appeared and consented to a finding of dependency and neglect. Temporary custody was awarded to LCCS and an amended case plan, which included counseling for the boys, was approved.
 {¶ 12} On December 27, 2002, LCCS filed a motion for permanent custody of Edward, Jr., and Timothy. The motion alleged that appellants had not successfully completed the parenting program and lacked insight into parenting issues. It further alleged that Edward, Sr., had not successfully completed substance abuse treatment, that appellants had not completed mental health therapy and that Edward, Sr.'s attendance at counseling sessions had been irregular. It did note, however, that Edward, Sr., does have several medical problems that have interfered with his ability to participate in outpatient drug treatment. The motion further alleged that appellants had lost their home and were living with relatives, that although they attended visits with the boys they lacked appropriate parenting skills and that Edward, Sr., was on probation after a conviction for felony child endangering. Finally, the motion stated that there were no relatives willing to make a permanent commitment to the boys and that permanent custody would be in their best interest so that a plan of adoption could be developed. A subsequently filed amended case plan included a change in the case plan goal to adoption.
 {¶ 13} Mary Clark, the guardian ad litem assigned to the case, submitted a report and recommendation to the court on March 5, 2003, which also recommended that permanent custody of the boys be awarded to LCCS. Clark found that appellants had failed to successfully complete parenting classes. She further found, however, that Edward, Sr., was meeting individually with a substance abuse counselor and that appellants had been keeping their home clean. Nevertheless, Clark stated that the boys' behavior had deteriorated while in the relative placement and that appellants had failed to recognize the urgency of completing the case plan services. She therefore recommended that LCCS be awarded permanent custody of the boys if an appropriate relative was unable to receive legal custody of them.
 {¶ 14} Subsequently, in May 2003, LCCS filed a motion to dismiss its prior motion for permanent custody. LCCS sought an order extending temporary custody of the boys for a period of six months and indicated that appellants had been making significant progress in their case plan by participating in services. LCCS also stated that there was reasonable cause to believe that the boys would be reunited with their parents within six months. An amended case plan was also filed with the court which changed the case plan goal back to reunification with appellants and stated that appellants had been making significant progress on their case plan services.
 {¶ 15} On September 19, 2003, LCCS filed a motion in the court below to terminate the temporary custody order and return custody of the boys to appellants with protective supervision being awarded to LCCS. Approximately one month later, however, LCCS filed a motion to dismiss its motion to terminate temporary custody and asked the court to extend the temporary custody order for six months. LCCS asserted that appellants had made significant progress on the case plan, but not to the extent necessary to have the children returned to their care and custody. LCCS also noted that Edward, Sr., was having serious health problems, that appellants still needed to complete parenting education and that appellants' housing situation was still unstable. An administrative review conducted in early February 2004 revealed that appellants were continuing to make progress but still were not consistent in working on their case plan. In addition, Edward, Sr.'s health problems interfered with his ability to attend group therapy, although he had left several drug screens which were all negative. Appellants had moved two times since August 2003, and at the time of the review were in what appeared to be a nice home, although it needed a stove and had a water problem.
 {¶ 16} On March 1, 2004, LCCS filed a motion for permanent custody of Edward, Jr., and Timothy and for an order terminating appellants' parental rights. LCCS asserted that the boys could not or should not be returned to the parents within a reasonable time and that permanent custody was in their best interest. More specifically, the motion asserted that because of appellants' poor performance on the case plan and because of the length of time that the boys had been out of the family home, permanent custody would be in their best interest. The guardian ad litem subsequently filed a report and recommendation in which she concluded that because appellants had failed to complete their case plan after nearly two years and because the boys need permanency, permanent custody was in their best interest and should be awarded to LCCS.
 {¶ 17} The case proceeded to trial on September 22 and 23, 2004. At the start of the trial, however, Melody informed Edward, Sr.'s attorney and the court that Edward, Sr., had been hospitalized for chest pains and breathing problems. Edward, Sr., has a history of cardiac, breathing, and circulation problems. Edward, Sr.'s attorney then requested a stay of the proceedings until his client could attend. The attorneys for LCCS, Melody, and for each of the boys did not object to the request, although the guardian ad litem did object. After some discussion, the court asked Edward, Sr.'s attorney to attempt to contact Edward's doctor to determine how long Edward would be hospitalized. After a recess, Edward, Sr.'s attorney reported that he had spoken with Edward, who stated that he was receiving blood thinners and other medication, but had not yet seen his doctor that day. Edward, Sr.'s attorney also reported that he and Melody's attorney were waiting to hear back from either of two doctors attending to Edward, Sr. The attorneys for Edward, Sr., Melody, Edward, Jr., and Timothy then argued that because the proceeding was to permanently terminate appellants' parental rights, Edward, Sr.'s presence was of utmost importance. The attorney for LCCS agreed that a continuance was necessary, arguing that Edward, Sr.'s counsel was unprepared for Edward's absence and did not have an opportunity to pursue other ways to involve Edward. She further asserted that by Edward's absence, he may be denied his right to the effective assistance of counsel because his counsel was anticipating Edward's participation with regard to cross-examination of witnesses. The court then asked to hear what would be LCCS's opening statement if the case were to proceed. After hearing counsel's statement, the court denied the continuance without waiting to hear from appellants' attorneys regarding how long Edward's doctors believed he would be hospitalized. The case then proceeded to trial.
 {¶ 18} The court heard testimony from five witnesses called by LCCS and the guardian ad litem. Their testimony addressed the issues of appellants' participation in parenting classes, counseling and ability to maintain a stable home environment. In addition, Edward, Sr.'s, history of heart attacks and other health problems and the boys' placement history were testified to. It is further noteworthy that prior to the trial, the court interviewed Edward, Jr., and Timothy in camera to ascertain their opinions about returning to their parents. At the conclusion of the trial, the court granted LCCS's motion for permanent custody. The court determined that the agency made reasonable efforts to help the parents learn to meet the basic needs of their children but that the parents were unable to do so in over two years. The court therefore held that permanent custody was in the best interest of the children.
 {¶ 19} On October 19, 2004, the court issued a judgment entry terminating appellants' parental rights and awarding permanent custody of Edward, Jr. and Timothy to LCCS. Specifically, the court found that there was clear and convincing evidence to support findings under R.C.2151.414(E)(1), (2), (4), (14) and (16), and, therefore, that the boys cannot be placed with either parent within a reasonable time or should not be placed with either parent. The court further found that it was in the boys' best interest that LCCS be awarded permanent custody of them so that the agency could look at a wide range of homes for possible adoption. It is from that judgment that appellants now appeal.
 {¶ 20} In their first assignment of error, appellants contend that the trial court erred in denying Edward, Sr.'s, motion for a continuance at the beginning of the trial when Edward was hospitalized and prevented from attending. For the following reasons we agree.
 {¶ 21} Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." It is well-settled that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." State v. Unger (1981), 67 Ohio St.2d 65,67. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 22} Parents have a fundamental liberty interest in the care, custody and management of their children. Santosky v. Kramer (1982),455 U.S. 745; In re Murray (1990), 52 Ohio St.3d 155, 157. Therefore, in a permanent custody proceeding, "parents must be provided with fundamentally fair procedures in accordance with the Fourteenth Amendment Due Process clause and Section 16, Article I of the Ohio Constitution."In the Matter of Elliot (June 25, 1993), 4th Dist. No. 92-CA-34. See, also, In the Matter of Vandale (June 29, 1993), 4th Dist. No. 92-CA-31. Even in criminal proceedings, however, "`the presence of the defendant * * * is a condition of due process'" only if his absence would prevent a fair and just hearing. State v. Taylor (1997), 78 Ohio St.3d 15, 25, quoting Snyder v. Massachusetts (1934), 291 U.S. 97, 107-108.
 {¶ 23} Ohio courts do not recognize an absolute right of a parent to be present at a civil proceeding to which he/she is a party. In reSprague (1996), 113 Ohio App.3d 274, 276. In determining parental due process rights in custody termination proceedings, however, courts look to the balancing test set forth in Mathews v. Eldridge (1976), 424 U.S. 319,335. The three factors the court must balance are "(1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural requirements." Sprague, supra at 276, citingMathews, supra at 335.
 {¶ 24} In addressing the issue of a parent's absence from a permanent custody hearing due to her incarceration, the Ninth District Court of Appeals has held that "in balancing all of the factors involved in determining compliance with procedural due process, an incarcerated parent's right to due process is not violated when she is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that she may wish to present could be presented by way of deposition." In re Frasher (Aug. 20, 1997), 9th Dist. No. 18100; see, also, In re: G.C. M.C., 8th Dist. No. 83994, 2004-Ohio-5607.
 {¶ 25} In the present case, Edward, Sr., was represented by counsel at the permanent custody trial and a full record of that proceeding was made. Edward's counsel, however, only learned on the day of the hearing that Edward had been hospitalized and would be unable to attend. The hearing started on a Wednesday and Edward was admitted to the hospital on Monday night of that same week. Although Edward did not contact his attorney to inform him of his medical situation, it is unreasonable to expect that even if Edward's counsel had learned of Edward's hospitalization on Monday night he could have arranged for Edward to be deposed prior to the hearing. LCCS asserts that because Edward's counsel had not listed Edward as a witness he was not prejudiced by his inability to testify by way of deposition. Edward's absence, however, which was not of his own doing as is the case when a party is incarcerated, does raise the issue of whether he was adequately represented by counsel. Much of the testimony at the trial dealt with Edward's participation in the various services provided for in the case plan. Edward's presence at the trial would have at the very least provided him with an opportunity to assist his counsel in the cross-examination of appellee's witnesses.
 {¶ 26} It is noteworthy that the record reflects Edward always appeared for scheduled hearings, never before asked for a continuance, and attended all scheduled visits with the boys except when he was hospitalized. This court has held that where a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel. In the Matter of: Savanah M., 6th Dist. No. L-03-1112, 2003-Ohio-5855. The case before us is not such a case.
 {¶ 27} Because Edward demonstrated cooperation with the court and counsel throughout these proceedings and because his absence from the final hearing was unintentional and beyond his control, we find that the trial court's refusal to grant a continuance, particularly given that all other parties except for the guardian ad litem agreed that a continuance was warranted, was unreasonable and an abuse of discretion. The first assignment of error is well-taken.
 {¶ 28} Given our ruling on the first assignment of error, this case must be remanded to the trial court for further proceedings and we need not address the second and third assignments of error.
 {¶ 29} On consideration whereof, the court finds that substantial justice has not been done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. This case is remanded to that court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal for which sum judgment is rendered against appellee on behalf of Lucas County and for which execution is awarded. See App.R. 24.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J. Concur.