JOURNAL ENTRY AND OPINION
{¶ 1} In this appeal brought pursuant to R.C. 2505.02(B)(4) and (A)(3), defendant-appellant William Schlotterer, D.O. ("the doctor"), appeals from the order of the trial court that directed him to respond to a discovery request made by plaintiff-appellee Medical Mutual of Ohio ("Med Mutual"), and, further, directed him to sign "The Agreed Qualified Protective Order" submitted by Med Mutual. The foregoing order would permit disclosure by the doctor of matters otherwise covered by R.C.2317.02(B)(1), i.e., the physician-patient testimonial privilege.
 {¶ 2} The doctor presents two assignments of error. Of relevance to this appeal, he first asserts the trial court abused its discretion in entering the order. He also asserts the trial court abused its discretion in denying his motion for a change of venue. *Page 2 
 {¶ 3} This court agrees with the doctor's first assertion; therefore, the trial court's order directing the doctor to abrogate the physician-patient privilege is vacated, and this matter is remanded for further proceedings.
 {¶ 4} The doctor's second assertion cannot be addressed by this court because it is premature. An order denying a change of venue does not constitute a final order pursuant to R.C. 2505.02(B); hence, this court lacks jurisdiction to consider the doctor's second assignment of error.
 {¶ 5} This appeal presents a unique situation. Med Mutual is a company which "provides insurance benefits to covered persons pursuant to health care insurance" policies.[1] In order to facilitate the insurance process, Med Mutual also contracts with doctors, agreeing to reimburse the doctors for services rendered to individuals covered by the company's policies. These individuals thus become the doctors' patients.
 {¶ 6} Med Mutual instituted this civil action against the doctor on April 1, 2006, presenting claims of fraud and breach of contract along with a demand for an accounting. Med Mutual's claims were based upon the "Participation Agreement," which the doctor and Med Mutual's predecessor-in-interest, Blue Cross Blue Shield of Ohio, signed in 1990. Med Mutual asserted that the doctor failed to comply with the terms of the "Provider Manual" incorporated into the agreement. *Page 3 
 {¶ 7} In its complaint, Med Mutual explained that the "Provider Manual" assigned certain codes, referred to as Common Procedure Technology ("CPT") codes, which were used by physician-providers for reporting to Med Mutual their assessment of their patients' conditions. The highest "evaluation and management code" was assigned code number "99215." This particular number indicated the "extent of the [physician's] examination, the comprehensiveness of the medical history [obtained from the patient], and the complexity of the medical decision making involved" was of the most intensive level. Since such a condition required the most extensive treatment, it was the code for which the physician-provider, correspondingly, received the highest compensation from Med Mutual for providing his or her services. Med Mutual claimed in its complaint that the doctor had engaged in unnecessary "up-coding" of his patients' conditions.
 {¶ 8} According to paragraphs twelve through sixteen, Med Mutual's "routine" review, conducted in late 2004, of the doctor's past billing submissions showed "an unusually high percentage of 99215 submissions." Med Mutual "requested and received" from the doctor in February 2005 "the medical records of ten (10) families for which [he] had submitted claims." Med Mutual's review of those records indicated that they "did not support the criteria for that code."
 {¶ 9} Med Mutual asserted that in June 2005 Med Mutual's investigators confronted the doctor about the discrepancy, and that he "admitted * * * that he had *Page 4 
been up-coding * * * for three to four years." Med Mutual further asserted that its "investigation disclosed that [the doctor] had been overpaid" by Med Mutual in the amount of "$269,576.00 for submissions he had made under the 99215 code which did not meet the criteria for [that] code payment."
 {¶ 10} Despite the precision of the foregoing figure, Med Mutual demanded damages against the doctor in the amounts of only $25,000.00 each for its claims of fraud and breach of contract. It, however, with respect to Count III of its complaint, demanded a "formal accounting" of the doctor's "liabilities" to it.
 {¶ 11} The doctor initially responded to the complaint with a motion for change of venue. He argued that since he lived and practiced medicine in Sandusky, Ohio, the action should be heard by the Sandusky County Court of Common Pleas. Med Mutual filed a brief in opposition to the doctor's motion. Subsequently, the trial court denied the doctor's motion for a change of venue.
 {¶ 12} The doctor then filed his answer to the complaint, denying the pertinent allegations, setting forth several affirmative defenses, and also presenting a five-count counterclaim against Med Mutual.[2] In essence, the doctor asserted that Med Mutual used the instant action to justify its refusal to honor any of his subsequent submissions for reimbursement with respect to its insureds. *Page 5 
 {¶ 13} On October 13, 2006 Med Mutual filed a motion it labeled as one "for a protective order and for an order directing Defendant to respond to discovery." In its brief in support of the motion, Med Mutual asserted that the doctor's "patient records are necessary for each side to substantiate its/his claims and defend against the other parties' claims."
 {¶ 14} Med Mutual stated it sought to "assist in the production of * * * non-party patient records, while still protecting the patients' confidential information," therefore, it had drafted and provided the doctor with a "proposed Qualified Protective Order" but the doctor had "refused to execute this Protective Order and to produce his patient records * * *." Med Mutual argued the doctor's refusal was unwarranted under the Participation Agreement, the language of the proposed protective order, Ohio law, and the terms of the "Certificates of Coverage" issued to its insureds.[3] In effect, therefore, although Med Mutual sought to use a sword against the doctor, it was labeled as a shield.
 {¶ 15} The doctor filed a brief in opposition to Med Mutual's motion. The doctor noted that Med Mutual's claims against him were limited neither in time nor in *Page 6 
scope when it came to his coding practices. He asserted that, under these circumstances, Med Mutual's motion sought an order from the court that required him "to waive physician-patient privilege on behalf of his patients, without the patient's consent, with respect to all patient medical records for the period January 1, 2000 through February 26, 2006." The doctor asserted that pursuant to R.C. 2317.02(B)(1), he lacked authority to do so. He further argued that the "Certificates of Coverage" were not intended to permit Med Mutual unlimited access to the patient's medical records.
 {¶ 16} After Med Mutual filed a reply brief in support of its motion, the trial court issued an order on January 10, 2007 that stated, in pertinent part, Med Mutual's "motion for a protective order and for an order directing Deft. to respond to discovery * * * is granted. Defendant is directed to respond to the discovery requests propounded by Plaintiff subject to the Protective Order to be executed by the parties."
 {¶ 17} Since the foregoing order constitutes a final order pursuant to R.C. 2505.02(B)(4) and (A)(3), the doctor filed the instant appeal. He presents two assignments of error.
 {¶ 18} The doctor's first assignment of error states: *Page 7 
 {¶ 19} "I. The Trial Court Erred As A Matter Of Law In Ordering Appellant To Produce Privileged, Non-Party, Physician-Patient Medical Records, Pursuant To Court Order Dated January 10, 2007."
 {¶ 20} The doctor argues the trial court's order is improper under Ohio law; therefore, the trial court abused its discretion in granting Med Mutual's motion, which, although designated as one seeking a "protective order," was actually a motion for discovery of privileged material.
 {¶ 21} A trial court's decisions on the management of discovery matters are reviewed under an abuse of discretion standard. State exrel. The V Cos. v. Marshall, 81 Ohio St.3d 467, 1998-Ohio-329. Questions of privilege, however, "including the propriety of disclosure, are questions of law and are reviewed de novo." Roe v. Planned ParenthoodSouthwest Ohio Region, Hamilton App. No. C-060557, 2007-Ohio-4318, [18.
 {¶ 22} Civ. R. 26 limits the scope of discovery to "any matter not privileged, which is relevant to the subject matter involved in the pending action." In determining the scope of discovery with respect to privileged matters, therefore, the countervailing interest must, by its very nature, outweigh the privilege. Roe v. Planned Parenthood SouthwestOhio Region, supra.
 {¶ 23} Med Mutual counters the doctor's argument by asserting that this case presents a "recognized" exception to the privilege set forth in R.C. 2317.02(B), i.e., *Page 8 
the "combined interests" of it and "the public outweigh the non-party patients' interests in absolute confidentiality." Following a review of the record, this court finds Med Mutual's assertion unpersuasive.
 {¶ 24} Med Mutual concedes, as it must, that R.C. 2317.02(B)(1) contains mandatory language that prohibits a physician from testifying "concerning a communication made to the physician * * * by a patient in that relation or the physician's * * * advice to a patient * * *."
 {¶ 25} It has been stated that, because the "the law of privilege is substantive in nature," courts are not free to "promulgate an amendment * * * which would deny a statutory privilege * * *." The physician-patient privilege, therefore, is not "subject to judicial policy preferences." State v. Smorgala (1990), 50 Ohio St.3d 222 at 223. The statute allows certain exceptions; none, however, applies in this case.
 {¶ 26} Nevertheless, Med Mutual asserts that this case presents one of those "special situations" as envisioned in Biddle v. Warren Gen.Hosp., 86 Ohio St.3d 395, 1999-Ohio-115. In that case, the Ohio Supreme Court observed that certain situations "may exist where the interest of the public, the patient, the physician, or a third person are of sufficient importance to justify the creation of a conditional or qualified privilege to disclose in the absence of any statutory mandate or common-law duty." *Page 9 
 {¶ 27} The supreme court indicated that, in such "special" situations, "disclosure is necessary to protect or further a countervailing interest which outweighs the patient's interest in confidentiality." Id.at 402 (emphasis added). Such a situation exists, for example, when the patient is committing a crime; under these circumstances, the privilege cannot be asserted as a cover for wrongdoing. State v. Jackson, Cuyahoga App. No. 80051, 2002-Ohio-2746, § 28, citing State v. Spencer (1998),126 Ohio App.3d 335. The language used in Biddle was intended to be narrow in scope, and the supreme court recently reiterated the admonition that judicially created exceptions to statutory privileges are disfavored.Jackson v. Greger, 110 Ohio St.3d 488, 2006-Ohio-4968, [13.
 {¶ 28} In an attempt to utilize the Biddle language, Med Mutual likens the facts of this case to those cases that affirmed a trial court's decision to allow limited disclosure of privileged matters because, for example, the physician was facing either revocation of his license to practice medicine or criminal charges related to his practice of medicine, or another patient presented a claim based upon a breach of a professional duty. Ohio State Med Bd. v. Miller (1989),44 Ohio St.3d 136; State v. McGriff (1996), 109 Ohio App.3d 668; Alcorn v. FranciscanHosp. Mt. Airy Campus, Hamilton App. No. C-060061, 2006-Ohio-5896;Richards v. Kerlakian, 162 Ohio App.3d 823, 2005-Ohio-4414. *Page 10 
 {¶ 29} In such cases, the "countervailing interest" that permitted disclosure concerned the welfare of the patients themselves. Med Mutual seeks to put itself in the shoes of a patient who allegedly is wronged by a doctor's unprofessional conduct; Med Mutual, however, is not that kind of plaintiff.
 {¶ 30} This case presents a situation that is somewhat similar to the situation faced by the First Appellate District Court in Roe v. PlannedParenthood Southwest Ohio Region, supra. That is, Med Mutual's claims involve neither a patient's class action nor a criminal case. Id., § 40. Abrogations of the physician-patient testimonial privilege, as allowed in the cases cited by Med Mutual, were not intended as "a judicial endorsement of [plaintiffs] acting as private attorneys general." Id., [41.
 {¶ 31} In this context, it must be noted that although Med Mutual's complaint makes a claim of fraud against the doctor, nothing in the record indicates that Med Mutual has complied with R.C. 3999.42, which imposes a statutory duty upon an insurer to report that belief to the state board of insurance. Nor is Med Mutual without any statutory remedy, since claims of insurance fraud primarily are covered by R.C.2913.47, and, should the doctor be found guilty of the crime, the court may order restitution as a part of the sentence imposed. The legislature thus has indicated a preference for such matters to be handled by the state, rather than by a private party. *Page 12 
 {¶ 32} The facts demonstrate that Med Mutual has no concern for the interests of any of the doctor's patients. Instead, Med Mutual has only its own pecuniary interest, seeking disclosure of privileged matters as a "fishing expedition" in order to conduct an audit of the doctor's billing practices. Such a situation does not fall within the exceptions to the physician-patient privilege which, in Ohio, previously have been judicially created. Biddle v. Warren Gen. Hosp., supra; State MedicalBoard v. Miller, supra; cf., Frederick V. Harris, M.D., Inc. v. Univ.Hosps. of Cleveland, Cuyahoga App. Nos. 76724, 76785, 2002-Ohio-983.[4]
 {¶ 33} Indeed, Med Mutual obviously possesses its own records which contain information relating the use of the "99215" code to a specific insured. Med Mutual made no representation to the court that it could not obtain current releases from the patients themselves of the information it sought. Walker v. Firelands Comm. Hosp., Erie App. No. E-03-009, 2004-Ohio-681, [25. It follows there is nothing to substantiate Med Mutual's actual need for the privileged material.Jackson v. Greger, supra, [15-17.
 {¶ 34} Moreover, even if an order of disclosure of privileged material falls within an exception envisioned by the Ohio Supreme Court, the order must be limited. *Page 12 
See, e.g., Richards v. Kerlakian, supra, {4. Although Med Mutual presented what it termed a "Proposed Qualified Protective Order," no time frame was included and, it was not limited to patients who were treated under the "99215" code.
 {¶ 35} The trial court's order of disclosure to Med Mutual thus, as a practical matter, is unlimited; even with redactions, "it is arguable that disclosure would result in a privacy invasion * * * * in the same vein that a voyeur observing in secret invades the subject's privacy * * *." Roe v. Planned Parenthood Southwest Ohio Region, supra, § 44. This alone makes it improper. Grove v. Northeast Ohio Nephrology Assoc,164 Ohio App.3d 829, 2005-Ohio-6914, § 26; Miller v. Bassett, Cuyahoga App. No. 86938, 2006-Ohio-3590; cf., Walker v. Firelands Comm. Hosp., supra at § 26; G. D. v. Riley (S.D. Ohio, 2007), Case No. 2:05-CV-980.
 {¶ 36} Since the trial court's order of disclosure violated the stricture of R.C. 2317.02(B)(1), the doctor's first assignment of error, accordingly, is sustained.
 {¶ 37} The doctor's second assignment of error challenges the trial court's denial of his motion for a change of venue. Although it might in a sense be convenient to decide the issue presented, this court cannot do so. A trial court's decision with respect to a motion for a change of venue does not constitute a final, appealable order. Johnson v.Pohlman, 162 Ohio App.3d 240, 2005-Ohio-3354, § . Since this court lacks jurisdiction to consider non-final orders, the doctor's second assignment of error cannot be addressed. R.C. 2505.02. *Page 13 
 {¶ 38} The trial court's order of January 10, 2007 is vacated.
 {¶ 39} This case is remanded for further proceedings.
[1] Quotes are taken from documents contained in the record.
[2] The trial court later granted Med Mutual's motion to dismiss "counts two and three" of the doctor's counterclaim. The doctor does not raise any challenge in the instant appeal to the trial court's order of dismissal.
[3] In pertinent part, a patient insured by Med Mutual agrees when he or she applies for benefit coverage for medical consultation or treatment that Med Mutual "may require [the medical] Provider's notes or other medical records" before it determines the availability of coverage. Thus, in applying each and every time for benefit coverage, the insured is "also giving * * * consent to release medical information to Medical Mutual." Without such consent, Med Mutual "has the right to refuse to reimburse for Covered Services * * *."
[4] In this context, it is important to note that "the regulations protecting the physician-patient privilege in Ohio are more stringent" even than those put forward in the federal government's Health Insurance Portability and Accountability Act, more commonly known as "HIPAA."Grove v. Northeast Ohio Nephrology Assoc, 164 Ohio App.3d 829,2005-Ohio-6914, ]}23; G. D. v. Riley (S.D. Ohio, 2007), Case No. 2:05-CV-980.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, JUDGE
MARY EILEEN KILBANE, J., CONCURS ANTHONY O. CALABRESE, JR., P.J., DISSENTS WITH SEPARATE DISSENTING OPINION