**RICHARDS, Exr., et al., Appellees,**

v.

**KERLAKIAN et al., Appellants.**

[Cite as *Richards v. Kerlakian,* 162 Ohio App.3d 823, 2005-Ohio-4414.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040825.

Decided Aug. 26, 2005.

The Lawrence Firm, L.P.A., Richard D. Lawrence, and Patrick J. Beirne; Rendigs, Fry, Kiely & Dennis and Thomas M. Evans, for appellees.

David C. Calderhead and Joel L. Peschke, for appellants.

SYLVIA SIEVE HENDON, Judge.

{¶ 1} Defendants-appellants Dr. George Kerlakian and his group practice, Group Health Associates, bring this appeal from the trial court's order granting a request for the discovery of approximately 30 operative reports involving surgeries performed by Kerlakian. In granting this request, the court denied Kerlakian's request for a protective order as to these same documents. The order, in truth, directs Kerlakian's co-defendant Good Samaritan Hospital to produce the disputed records, as the hospital maintains custody of the disputed documents. Good Samaritan is not a party to this appeal.

{¶ 2} Sandra Richards, individually and as the executor of the estate of her late son, Brett Thomas Richards, brought a wrongful-death action against Kerlakian after Brett died following gastric bypass (Roux–en–Y) surgery performed by Kerlakian at Good Samaritan Hospital. In the amended complaint, Richards alleged medical malpractice against various defendants and negligent credentialing against Good Samaritan Hospital. She and her husband also pursued loss-of-consortium claims.

{¶ 3} During the discovery phase of the pending litigation, Richards requested that Kerlakian produce redacted copies of all operative reports for Roux–en–Y surgeries he had performed at Good Samaritan Hospital. Kerlakian moved for a protective order, arguing that disclosure would violate the physician-patient privilege and that the records were unnecessary for the plaintiffs to pursue their claims.

{¶ 4} The trial court compelled production of the documents, specifying in its order that Kerlakian deliver to plaintiffs all "operative reports for Roux–en–Y gastric bypass procedures performed by Dr. Kerlakian on or before April 16, 2000." The court added language designed to protect the identities of the former patients: "The operative reports shall be redacted to exclude patient's name, address, telephone number, social security number, physician/patient discussions and/or any other personally identifiable information," and "[t]his information is not to be shared with any outside source or filed with the Court, except under seal and with prior agreement of all parties and/or order of the Court. This information may be shared in confidence with only those individuals who are or may be expected to be witnesses at the trial of this matter." The court also included a provision for the plaintiffs' return of the redacted operative-report copies at the conclusion of the litigation.

{¶ 5} In his appeal, Kerlakian relies on R.C. 2317.02, which sets out the testimonial privilege of patient and physician communications. There is little dispute that the operative reports requested fall under the statute's definition of

the term "communication,"[1] and that the records fall under the scope of R.C. 2317.02. But the privilege afforded under R.C. 2317.02 is not absolute. The Ohio Supreme Court has held that the discovery of such protected communications may be appropriate under certain circumstances, such as to further a countervailing interest that outweighs the nonparty patient's interest in confidentiality.[2] Ohio courts have allowed discovery of confidential information under these circumstances, as long as the nonparty patient's identity is sufficiently protected.[3] Likewise, courts in other jurisdictions have concluded that the medical records of a nonparty patient may be discovered where identifying information is deleted.[4]

 {¶ 6} In this case, the plaintiffs requested the medical documents to develop a primary claim against Good Samaritan on the issue of negligent credentialing. It is difficult to imagine how else the negligent-credentialing claim

---

1. R.C. 2317.02(B)(5)(a) defines "communication" as "acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician or dentist to diagnose, treat, prescribe, or act for a patient." The statute further states that "[a] 'communication' may include, but is not limited to, any medical, dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis or prognosis."

2. See *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph two of the syllabus.

3. See *Fair v. St. Elizabeth Med. Ctr.* (2000), 136 Ohio App.3d 522, 737 N.E.2d 106 (ordering disclosure of redacted nonparty patient's medical records where such records were necessary to establish plaintiff's claim); *State v. McGriff* (1996), 109 Ohio App.3d 668, 672 N.E.2d 1074 (allowing the use of redacted medical records of nonparty patients in criminal proceedings against physician).

4. *Cochran v. St. Paul Fire & Marine Ins. Co.* (W.D.Ark.1995), 909 F.Supp. 641 (hospital's medication incident report discoverable where nonparty patients' identification deleted); *Ziegler v. Superior Court* (1982), 134 Ariz. 390, 656 P.2d 1251 (permitting discovery of redacted medical charts of 35 nonparty patients of defendant cardiologists in an action against them and hospital for unnecessary implantation of heart pacemaker); *Community Hosp. Assn. v. Boulder Dist. Court* (1977), 194 Colo. 98, 570 P.2d 243 (copies of medical records of 140 surgical nonparty patients of defendants ordered produced where records were redacted of identifying information and filed with the court under seal); *Amente v. Newman* (Fla.1995), 653 So.2d 1030 (medical records of physician's obese obstetrics patients during a two-year period allowed where all identifying information redacted); *Terre Haute Regional Hosp., Inc. v. Trueblood* (Ind.1992), 600 N.E.2d 1358 (discovery permitted of redacted medical records of nonparty surgical patients where the plaintiff's claim was based on allegedly unnecessary surgeries); *State ex rel. Lester E. Cox Med. Ctr. v. Keet* (Mo.1984), 678 S.W.2d 813 (allowing discovery of redacted medical records of nonparty patients treated at defendant's medical center who suffered same complications as decedent); *Tanzi v. St. Joseph Hosp.* (R.I.1994), 651 A.2d 1244 (nonparty patients' emergency-room treatment records discoverable with identifying information redacted); *In re Whiteley* (Tex.App.2002), 79 S.W.3d 729 (allowing production of medical records of nonparty patients on whom defendant performed same surgery as on plaintiff, where condition of other patients was relevant to the issue of malpractice and records were appropriately purged of identifying information).

could have been investigated without the disputed documents. The plaintiffs presented a second purpose for the operative reports: to impeach portions of Kerlakian's deposition testimony. They presented this argument with specificity, indicating how the operative reports could be used as impeaching documents. We note that we are not deciding whether the information requested would ultimately be admissible, but whether the information sought is reasonably calculated to lead to admissible evidence.[5]

{¶ 7} Kerlakian argues that this case cannot be distinguished from *Wozniak v. Kombrink*,[6] where this court reversed the trial court's order allowing the production of privileged medical documents. In *Wozniak*, the plaintiff wanted a large amount of nonparty medical records solely for the purpose of impeaching expert-witness testimony. The trial court ordered redaction of the names of the nonparty patients prior to production, but the reports still contained sufficient identifying information to compromise the privacy of the nonparty patients. In reversing the trial court, we held that the risk of disclosing a patient's identity outweighed the benefit to Wozniak in impeaching the testimony of an expert witness, especially where Wozniak had less intrusive means to obtain the same information.

{¶ 8} Here, the plaintiffs sought the records to impeach a *party defendant* and to develop a primary claim. The trial court crafted adequate protection for the identity of the nonparty patients and included language to protect against indiscriminate dissemination of the information sought to be discovered. The court specifically weighed the risk of disclosure of this information otherwise protected by R.C. 2317.02 against the plaintiffs' compelling need for the information. Under these circumstances, the court did not abuse its discretion in denying Kerlakian's request for a protective order and in ordering production of the redacted records.

{¶ 9} The assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

GORMAN, P.J., and PAINTER, J., concur.

---

5. See Civ.R. 26(B)(1).

6. (Feb. 13, 1991), 1st Dist. No. C–89053.