GROVE et al., Appellees,

v.

NORTHEAST OHIO NEPHROLOGY ASSOCIATES, INC. et al., Appellants.

[Cite as Grove v. Northeast Ohio Nephrology Assoc.,
Inc., 164 Ohio App.3d 829, 2005-Ohio-6914.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 22594 and 22585.

Decided Dec. 28, 2005.

830

Gerald J. Glinsek, for appellees.

Jeffrey E. Schobert and Brian J. Butler, for appellant Northeast Ohio Nephrology.

Steven J. Hupp and Peter A. Holdsworth, for appellant Summit Renal Care.

WHITMORE, Judge.

{¶ 1} Defendants-appellants, Northeast Ohio Nephrology Associates, Inc. ("NONA") and Summit Renal Care, L.L.C. ("SRC") have appealed from the judgment of the Summit County Court of Common Pleas that denied plaintiffs-appellees, Marvin Grove and his wife Nancy Grove, access to the medical records of patient Carmella Pleli, but ordered them to disclose the treatment received by Pleli while at NONA's and SRC's facilities. This court reverses.

I

{¶ 2} On June 2, 2004, appellees filed a medical-malpractice action against NONA and SRC for injuries sustained in an automobile accident that occurred on

February 5, 2003.[1] The complaint alleged that appellants had a duty to assess Pleli's condition after she received dialysis and to prevent her from driving in an impaired state. The complaint contended that appellants breached that duty, and as a result, Pleli, while in a state unfit to operate a motor vehicle, lost control of her automobile, causing a serious collision in which appellee Marvin Grove was injured.[2] The complaint included interrogatories requesting information regarding whether appellants provided treatment to Pleli on February 5, 2003.

{¶ 3} On July 2, 2004, NONA filed a motion to dismiss pursuant to Civ.R. 12(B)(6). On July 7, 2004, appellees served SRC with a request to produce documents, specifically, Pleli's complete patient chart. On July 16, SRC filed a motion to dismiss. On July 27, 2004, SRC responded to appellees' discovery requests, objected to the request for production of information related to Pleli's medical treatment, and asserted physician patient privilege. On July 28, 2004, appellants' motions to dismiss were converted to motions for summary judgment.

{¶ 4} On August 25, 2004, appellees filed a motion to compel discovery of Pleli's medical information, including her complete patient chart. Appellees moved the court for an in camera inspection of the documents. On September 7, 2004, SRC filed a brief in opposition to appellees' motion and asserted that absent a waiver, Pleli's medical information was privileged pursuant to R.C. 2317.02(B)(1). The trial court conducted a status conference on February 18, 2005, and on February 23, 2005, the court issued an order declaring that appellees were not entitled to Pleli's medical records but could receive information related to the treatment she received at the time she was in appellants' establishments.

{¶ 5} On March 21, 2005, appellees issued a notice for the depositions of Dr. Christopher Boshkos, NONA's agent and the person who supervised or administered Pleli's treatment on the date in question. Appellants timely appealed the February 23, 2005 trial court order, each asserting a single assignment of error.

## II

### SRC's Assignment of Error

The trial court abused its discretion by ordering Summit Renal Care's employees to testify regarding non-party Carmela Pleli's medical care after ordering that Ms. Pleli's Summit Renal Care medical records were privileged.

---

1. Appellee Nancy Grove claimed loss of consortium due to her husband's injuries and pain and suffering.

2. Appellees settled all claims with Pleli and her insurer prior to filing the complaint against appellants.

NONA's Assignment of Error

The trial court erred by ordering that appellee may obtain information from appellant regarding the medical treatment of the non-party patient, Carmela Pleli.

{¶ 6} In their sole assignments of error, both SRC and NONA have argued that the trial court abused its discretion by ordering discovery of information related to Pleli's medical treatment. Specifically, they have argued that the information sought by appellees is privileged pursuant to R.C. 2317.02, that Pleli has never waived that privilege, that medical professionals are obligated by law to protect that privilege, and that medical professionals have third-party standing to assert the privilege on appeal from the trial court's internally inconsistent judgment order. This court agrees.

**Final, Appealable Order**

{¶ 7} As a preliminary matter, we must dispose of two jurisdictional questions. First, as a general rule, orders regarding discovery are considered interlocutory and not immediately appealable. See *Walters v. Enrichment Ctr. of Wishing Well, Inc.* (1997), 78 Ohio St.3d 118, 120–121, 676 N.E.2d 890. However, the Ohio Revised Code has created several exceptions to the general rule. R.C. 2505.02(B) provides:

An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

\* \* \*

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 8} The statute defines a "provisional remedy" as "a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence." R.C. 2505.02(A)(3). Clearly the matter at hand falls into the statutory definition of "provisional remedy."

{¶ 9} Furthermore, section (4)(a) is satisfied because the order determined the discovery issue and prevented a judgment in favor of SRC and NONA with respect to the discovery issue. Finally, section (4)(b) is satisfied, as appealing subsequent to a final judgment would not be meaningful because the physician-

patient privilege would have already been compromised. Accordingly, this court finds that the order being appealed from is a final, appealable order pursuant to R.C. 2505.02. See *Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. No. 22387, 2005-Ohio-5103, 2005 WL 2373916, at ¶ 28; *Amer Cunningham Co., L.P.A. v. Cardiothoracic Vascular Surgery of Akron*, 9th Dist. No. 20899, 2002-Ohio-3986, 2002 WL 1800323, at ¶ 11.

### Standing

{¶ 10} Next, we must determine whether NONA and SRC have standing to bring this appeal. NONA and SRC have appealed a trial court order requiring them to disclose privileged information and have asserted the physician-patient privilege outlined in R.C. 2317.02(B)(1). Appellees have argued that Ohio law has long held that the patient is the exclusive holder of the physician-patient privilege and that third parties generally cannot assert the privilege on the patient's behalf. Appellees have also argued that although appellants have a duty of confidentiality with respect to privileged information, the existence of a valid court order shields them from any liability for disclosure of that information and thus precludes them from asserting the privilege on appeal. We disagree.

{¶ 11} In *Amer Cunningham*, supra, this court addressed the issue of a legal professional's standing to assert the professional privilege created by R.C. 2317.02. We found that in order to adhere to his professional and statutory obligation to protect privileged information, an attorney may assert the privilege and has standing to appeal as an " 'aggrieved party, in that the lower court's decision has adversely affected his rights.' " Id. at ¶ 12, quoting *In re Shepherd* (May 5, 1999), 9th Dist. No. 19239, at 2, 1999 WL 312378. We see no reason to provide standing to attorneys and not to medical professionals.

{¶ 12} While we acknowledge that a patient owns the privilege, we cannot see the sense in charging medical professionals with confidentiality, then eviscerating their ability to protect that confidentiality. See id. at ¶ 13. Appellees' argument that a valid court order somehow precludes appellate review is unpersuasive, because appellants are "aggrieved," i.e., they have been adversely affected by the trial court's order. Furthermore, without the opportunity for appellate review, it is not a foregone conclusion that the trial court's order is valid. Therefore, we find that medical professionals generally, and appellants specifically, have standing to appeal a discovery order that requires them to violate the mandate of the statutory physician-patient privilege.

### Substantive Issues

{¶ 13} Having satisfied the jurisdictional requirements, we turn next to the substantive issues on appeal. This court reviews a trial court's discovery

orders under an abuse-of-discretion standard. *Abels v. Ruf*, 9th Dist. No. 22265, 2005-Ohio-719, 2005 WL 418028, at ¶ 9. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 14} We begin by noting that paragraph one of the judgment order is not at issue in this appeal.[3] Appellants have appealed only the trial court's mandate in paragraph two of the order.[4] NONA and SRC have appealed the trial court's discovery order on the basis of the physician-patient privilege codified in R.C. 2317.02(B)(1). The applicable portion of the statute reads as follows:

The following persons shall not testify in certain respects:

* * *

(B)(1) A physician or a dentist concerning a communication made to the physician or dentist by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

{¶ 15} The statute lays out situations in which the physician may be required to testify: (1) in any civil action where the patient or guardian gives express consent, or if the patient is deceased, where the spouse or executor gives express consent, (2) if a claim is filed by the patient, (3) in any civil action concerning court-ordered treatment or services, (4) in any criminal action concerning tests or results of tests that determine the presence of alcohol or drugs in the patient's blood, (5) in any criminal action against the physician, (6) in a will contest. R.C. 2317.02(B)(1)(a) through (e).

{¶ 16} It is clear that the present action does not fit into any of the statutory exceptions. There is no evidence in the record that Pleli has expressly consented; the claim was filed by a third-party plaintiff, not the patient; the action does not concern court-ordered treatment or services; the action is not criminal in nature; and the action is not a will contest. Furthermore, the "communication" protected by the privilege is broadly defined by R.C. 2317.02(B)(5)(a) to include

---

3. Paragraph one states: "The Plaintiff is not entitled to the medical records as requested of the Defendants of the non-party to this case, Carmella Pheli [sic]."

4. Paragraph 2 states: "The Plaintiff may receive from the Defendant the treatment given to said Carmella Pheli [sic] and the time she was in the Defendant's establishment."

information used to treat a patient, Id. See *State v. Jones* (2000), 90 Ohio St.3d 403, 424, 739 N.E.2d 300 (Cook, J., concurring) (stating that the definition of communication under the statute is broad). Additionally, the statute is open-ended, utilizing the language "may include, but is not limited to" to describe a communication. We find that Pleli's course of treatment is privileged information and is protected by R.C. 2317.02(B)(1).

{¶ 17} Therefore, because the physician-patient privilege is applicable in this case, we find that the trial court abused its discretion when it denied appellees access to Pleli's medical records while at the same time ordering appellants to provide information regarding the treatment received by Pleli. By allowing testimony concerning Pleli's course of treatment, the trial court provided an unacceptable end-run around R.C. 2317.02(B)(1). Furthermore, the order was internally inconsistent in that it disallowed discovery of Pleli's medical records, yet allowed deposition testimony on the very same information found in those records.

{¶ 18} Appellees have also argued that Health Insurance Portability and Accountability Act ("HIPAA") has preempted R.C. 2317.02, thus allowing for discovery of Pleli's privileged information. This argument is unpersuasive.

{¶ 19} Appellees point to Section 1320d–7, Title 42, U.S.Code for the proposition that HIPAA privacy regulations supersede contrary state laws. That section states:

(a)(1) Except as provided in paragraph (2), a provision or requirement under this part, or a standard or implementation specification adopted or established under sections 1320d–1 through 1320d–3 of this title, shall supersede any contrary provision of State law.

Nevertheless, as NONA correctly pointed out in its reply brief, the statute has created statutory exceptions to this general rule:

A provision or requirement under this part, or a standard or implementation specification adopted or established under sections 1320d–1 through 1320d–3 of this title, shall not supersede a contrary provision of State law, if the provision of State law * * *.

(B) subject to section 264(c)(2) of the Health Insurance Portability and Accountability Act of 1996, relates to the privacy of individually identifiable health information.

Section 1320d–7(a)(2)(B), Title 42, U.S.Code.

{¶ 20} Because the provision of state law at issue here relates to the privacy of individually identifiable health information, R.C. 2317.02(B)(1) is not superseded by Section 1320d–7. However, HIPAA also contains a preemption provision that

must be reviewed. The applicable provision is found in Section 160.203, Title 45, C.F.R. and states:

A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met:

* * *

(b) The provision of state law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

{¶ 21} The "Definitions" section found in Section 160.202, Title 45, C.F.R. is helpful in parsing out exactly what 160.203(b) states with regard to the preemption of state law. A state law "[r]elates to the privacy of individually identifiable health information" when the state law has the "specific purpose of protecting the privacy of health information or affects the privacy of health information in a direct, clear, and substantial way." Section 160.202, Title 45, C.F.R. A state law is "more stringent" under the exception of 160.203(b) when "[w]ith respect to use or disclosure" of individually identifiable health information, "the law prohibits or restricts a use or disclosure * * * under which such use or disclosure otherwise would be permitted under this subchapter." Id.

{¶ 22} We think it plain that R.C. 2317.02(B)(1) relates to the privacy of individually identifiable health information. The clear purpose of R.C. 2317.02(B)(1) is to codify the physician-patient privilege and protect the patient's health information. Furthermore, R.C. 2317.02(B)(1) is more stringent because it prohibits use or disclosure of health information when such use or disclosure would be allowed under HIPAA. The HIPAA privacy regulation, found in Section 164.512, Title 45, C.F.R. allows disclosure of protected health information in the course of any judicial or administrative proceeding in response to a court order. HIPAA also allows for discovery of privileged health information by subpoena, discovery request, or by other lawful processes if the covered entity receives adequate assurances that the individual who is the subject of the health information has been given notice of the request or that reasonable efforts have been made to secure a protective order. Section 164.512(e), Title 45, C.F.R.

{¶ 23} In contrast, R.C. 2317.02(B)(1) allows disclosure in a civil case only under very specific circumstances: patient waiver, consent by spouse or executor if patient is deceased, civil actions filed by the patient, or civil actions concerning court-ordered treatments. R.C. 2317.02(B)(1)(a)(i) through (iii); R.C. 2317.02(B)(1)(b). We think it apparent that the regulations protecting the physician-patient privilege in Ohio are more stringent than those put forward in

HIPAA. Therefore, because R.C. 2317.02(B)(1) relates to the privacy of individually identifiable health information and is more stringent than Section 164.512, Title 45, C.F.R., we find that HIPAA does not preempt R.C. 2317.02(B)(1).

{¶ 24} Finally, appellees have argued that a trial court may permit discovery of patient information when the personal information is redacted and when limitations are placed on access to the material. Appellees cite the recent decision of the First Appellate District in *Richards v. Kerlakian*, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, for the propositions that "the privilege afforded under R.C. 2317.02 is not absolute", and that discovery of confidential information is allowable "as long as the nonparty patient's identity is sufficiently protected." Id. at ¶ 5. This argument in unpersuasive in the context of the present facts, and appellees' emphasis on this case is misplaced.

{¶ 25} First, *Richards* is distinguishable from the instant matter on the facts. In *Richards*, the trial court's discovery order specified protective measures such as redaction and safeguarding the information. See id. at ¶ 4. In the present case, the discovery order had no such protections, but was a blanket statement that "Plaintiff may receive from Defendant the treatment given to said Carmella [Pleli]." In the case sub judice, no steps were taken by the trial court to protect the patient's identity information or to safeguard the information once it was obtained. Therefore, the reasoning supporting the First Appellate District's decision is inapposite when applied to the case at bar.

{¶ 26} Furthermore, in the present case, the protective measures of redaction and safeguarding the information would fail to achieve the overarching purpose behind the *Richards* decision: protecting the identity and privacy of patients. See id. at ¶ 5 ("Ohio courts have allowed discovery of confidential information under these circumstances, as long as the nonparty patient's identity is sufficiently protected" and "medical records of a nonparty patient may be discovered where identifying information is deleted"). Appellants correctly argue that the trial court order mandates the disclosure of privileged medical information regarding a single, identifiable individual – Pleli. This court can see no way in which Pleli's anonymity and privacy could be preserved, even taking into account redaction of her personal information.

{¶ 27} The *Richards* decision supports this position. In order to reach its decision permitting discovery of privileged information, the First District distinguished a prior case, *Wozniak v. Kombrink*, 1st Dist. No. C–89053, 1991 WL 17213. In *Wozniak*, the court reversed the trial court's discovery order because, while the order directed the redaction of the names of the nonparty patients prior to production, the reports "still contained sufficient identifying information to compromise the privacy of the nonparty patients." *Richards* at ¶ 7. See *Wozniak* at *3 ("The identities of those nonparty witnesses may be discernable even if their names are deleted from the records"). In the present case, we find

it obvious that disclosing the information required under the discovery order, even redacted, would "compromise the privacy of the nonparty patients." *Richards* at ¶ 7.

{¶ 28} While we have no qualms with paragraph one, we find, based on the foregoing, that the trial court erred when it directed NONA and SRC to provide appellees with information concerning Pleli's medical treatment pursuant to paragraph two of the judgment order. Accordingly, appellants' assignments of error have merit.

### III

{¶ 29} NONA and SRC's assignments of error are sustained. The judgment of the trial court is reversed solely as to paragraph two of the judgment order and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

SLABY, P.J., concurs.

CARR, J., concurs in judgment only.

CARR, Judge, concurring in judgment only.

{¶ 30} Although I dissented in *Amer Cunningham Co., L.P.A. v. Cardiothoracic Vascular Surgery of Akron,* 9th Dist. No. 20899, 2002-Ohio-3986, 2002 WL 1800323, due to a lack of standing, I believe that the present case is distinguishable in that the patient whose privilege is being asserted is not a party to the litigation.