Donovan, J.,
dissenting.
{¶ 79} I respectfully dissent. I would reverse the judgment of the court of appeals, thus reinstating the trial court’s order compelling discovery. My focus in this dissent will not be on 2008 Am.Sub.H.B. No. 280 (“H.B. 280”), as I find the amendments to be merely remedial, since the Roes, in my view, are entitled to the discovery initially ordered by the trial court under pre-existing, as well as current, law. The Roes should be entitled to redress a pre-existing actionable wrong.
{¶ 80} The Roes have presented cognizable claims; they should be able to pursue discovery on their claims. “The truth must be known, as far as possible, to enable the law to provide justice in each case.” State v. Antill (1964), 176 Ohio St. 61, 64, 26 O.O.2d 366, 197 N.E.2d 548. The majority’s approach to discovery and the standard of review applied herein effectively eviscerates the Roes’ rights to examine every possible legal argument. This court should recognize the value of the numerous protective orders that Civ.R. 26 provides. Without this recognition, the Roes and other plaintiffs lose legal arguments before they are fully developed. Accordingly, I cannot agree with the narrow construction the majority now assigns Biddle v. Warren Gen. Hosp. (1999), 86 Ohio St.3d 395, 715 N.E.2d 518.
{¶ 81} Commensurate with the objection to discovery, the Roes have the initial burden of establishing relevance of the records sought. Relevance should be approached with flexibility, favoring discovery. The trial court correctly started with the premise that the suspected child-abuse reports and medical records need not necessarily be admissible at trial to permit examination during the discovery process. This is clearly not a situation in which the Roes are making a request for totally irrelevant records. Even a tangential relationship between the Roes’ *416 claims and information sought that may lead to admissible evidence satisfies the relevance requirement.
{¶ 82} A trial court enjoys broad discretion in the regulation of discovery. Whitt v. ERB Lumber, 156 Ohio App.3d 518, 2004-Ohio-1302, 806 N.E.2d 1034. The standard of review in discovery matters is normally abuse of discretion. While the management of discovery is reviewed under an abuse-of-discretion standard, questions of the existence of a privilege are questions of law and are reviewed de novo. Whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo. This is a correct characterization of the standard of review in deciding a pure question of law. In determining the pure legal question, an appellate court may properly substitute its judgment for that of the trial court. However, in the instant case, the pure legal question has been resolved. In fact, it is undisputed that the third-party/nonparty records are confidential. This case does not turn upon a misconstruction or misapplication of R.C. 2317.02 (privileged communication). Thus, in my view, the appellate court erroneously reviewed the trial court’s order by utilizing a de novo review, and this court’s very recent decision in Med. Mut. of Ohio v. Schlotterer, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, is not controlling.
{¶ 83} In Med. Mut. of Ohio, the issue was whether patients’ consents to release their medical records to their insurer waived the physician-patient privilege in the context of a civil fraud action brought by the insurer against the physician. The court correctly applied the de novo standard of review to determine whether the information sought by the insurer was confidential and privileged. Med. Mut. of Ohio, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13, has no application to the Roes’ discovery request, as the issue herein is necessarily not one of confidentiality and privilege, but one of “the propriety of the disclosure.”
{¶ 84} Given the Roes’ right to litigate their claims and the third-party/nonparty interests in confidentiality, the trial court should be* charged with weighing competing interests. This weighing of competing interests is a balancing of facts and interests best suited for the trial judge’s determination. From a policy perspective, the application of an abuse-of-discretion standard would be consistent with the trial court’s widely recognized and accepted discretion to regulate the discovery process. It would also be consistent with the generally recognized proposition that the trial court is most informed and knowledgeable about the unique circumstances of a case and thus is in the best position to evaluate and decide these issues. Accordingly, the trial court should be afforded the proper deference in balancing the competing interests at stake. The trial court could properly conclude that the Roes’ right to seek redress and the need to protect *417 children who are victimized by adult sexual predators outweigh confidentiality concerns. The suggestion by the appellate court that there is an erroneous interpretation of law requiring de novo review on this record is simply not true. Weighing countervailing interests is not a legal determination, nor should it be characterized as such. Rather, it is a balancing of facts, which may lead to the conclusion that the privilege is outweighed by other rights, to wit, an injured party’s right to redress.
{¶ 85} The majority, in my view, creates new law that will permit appellate courts to substitute their judgment — that is, their own opinions — for what they would have done in managing the discovery process by characterizing this case as one in which the appellate court conducts a de novo review of the discovery order. The “propriety of disclosure” of redacted medical records should be all about a “countervailing interest,” pursuant to a proper construction of Biddle, 86 Ohio St.3d at 402, 715 N.E.2d 518. Biddle's applicability should not be limited to the defense of a tort of unauthorized disclosure of medical information. Countervailing interests are not different from competing considerations. Curiously, this court has explained the abuse-of-discretion standard as “ ‘the idea of choice, of an exercise of will, of a determination made between competing considerations.’ ” Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248, quoting State v. Jenkins (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264. What we have here is competing considerations, and an abuse-of-discretion standard should apply.
{¶ 86} In Biddle, this court acknowledged that there are special situations in which “disclosure is necessary to protect or further a countervailing interest that outweighs the patient’s interest in confidentiality.” 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph two of the syllabus. I conclude that this is one of those “special situations.” In Biddle, this court acknowledged, “[WJhen a physician’s report ‘is made in the manner prescribed by law, he of course has committed no breach of duty toward his patient * * *and no liability could result.’ ” Id. at 402, 715 N.E.2d 518, quoting Simonsen v. Swenson (1920), 104 Neb. 224, 228, 177 N.W. 831. However, the claims set forth by the Roes are simply that liability should result when the opposite occurs — i.e., statutory duties are not fulfilled, and injury results.
{¶ 87} There is absolutely nothing in Biddle that suggests, much less holds, that the “propriety of disclosure” should be decided as a matter of law. Biddle was the only case that the appellate court relied upon for this proposition, other than Alcorn v. Franciscan Hosp. Mt. Airy Campus, Hamilton App. No. C-060061, 2006-Ohio-5896, 2006 WL 3231208, ¶ 17, which merely cites Biddle. Accordingly, any reliance by the appellate court on Alcorn and Biddle, in my view, is misplaced.
*418 {¶ 88} Although the majority suggests that “courts have interpreted Biddle as creating a right to obtain nonparty confidential medical information,” the cases cited by the majority do not attribute that construction to Biddle: Fair v. St. Elizabeth Med. Ctr. (2000), 136 Ohio App.3d 522, 527, 737 N.E.2d 106; Richards v. Kerlakian, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 5; Alcorn, Hamilton App. No. C-060061, 2006-Ohio-5896, 2006 WL 3231208, ¶ 17; Cepeda v. Lutheran Hosp., Cuyahoga App. No. 90031, 2008-Ohio-2348, 2008 WL 2058588, ¶ 15.
{¶ 89} Robert Fair, for example, was assaulted in a psychiatric ward by another patient, sustaining serious injuries. Fair, 136 Ohio App.3d at 523, 737 N.E.2d 106. Fair and his wife brought claims of negligence and loss of consortium against the hospital (“SEMC”). Id. at 524, 737 N.E.2d 106. SEMC’s motion for summary judgment was overruled, and the Fairs filed a motion to compel the records of Robert’s attacker. The trial court overruled the motion to compel in reliance upon Johnston v. Miami Valley Hosp. (1989), 61 Ohio App.3d 81, 85, 572 N.E.2d 169, which refused to create an exception to the doctor-patient privilege to prove the existence of a “special relationship” between the hospital and a patient that caused injury to another patient. SEMC filed a second motion for summary judgment, and in response, the Fairs filed a Civ.R. 56(F) motion, stating that they could not oppose SEMC’s motion because they lacked sufficient discovery. Fair, 136 Ohio App.3d at 524, 737 N.E.2d 106. Following a hearing, the trial court overruled the Fairs’ motion, based upon Johnston, determining that the alleged attacker’s name and records were privileged information unless waived by the patient, and it granted SEMC’s motion for summary judgment. Id. at 524-525, 737 N.E.2d 106.
{¶ 90} On its own motion, the trial court then vacated its decision to “properly frame the privilege issues for appeal.” Id. at 525, 737 N.E.2d 106. The trial court then filed its decision granting SEMC’s motion for summary judgment, reiterating that the information sought was deemed not discoverable. Id.
{¶ 91} On appeal, the Fairs relied upon Biddle, arguing that an appropriate circumstance existed “in which confidentiality must yield to the public interests.” Fair, 136 Ohio App.3d at 526, 737 N.E.2d 106. The Fairs claimed that “their right to redress for Robert’s injuries should prevail over the confidentiality interests of the unidentified patient.” Id.
{¶ 92} The Second District noted, “[T]o the extent that the Ohio Supreme Court has carved out an exception to the physician-patient privilege in certain cases, Johnston, supra, has been overruled,” and it determined that the facts of the Fairs’ case fell “within the exception articulated in Biddle.” Fair, 136 Ohio App.3d at 526, 737 N.E.2d 106. The court reached this holding because “SEMC had a duty to reasonably protect Robert from assault or battery by third persons, *419 including other patients,” pursuant to R.C. 5122.29. Id. at 527, 737 N.E.2d 106. The court further determined that the Fairs’ right of recourse for SEMC’s alleged breach of duty amounted to a “special situation where disclosure must be made to protect Robert’s rights.” Id. Since SEMC’s position was that no offense of violence occurred, it would be “inherently unfair” to limit the Fairs to SEMC’s determination, without access to the attacker’s medical records. Id. In other words, disclosure was necessary to protect Robert’s rights. Finally, all identifying information was to be redacted from the records to protect the alleged attacker’s identity. Id.
{¶ 93} In Richards, a doctor and his practice group appealed the trial court’s order granting discovery of approximately 30 redacted operative reports involving surgeries performed by the doctor in the context of a wrongful-death action. Richards, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 1. The trial court’s order required that all identifying information be redacted and that the information not be shared with nonwitnesses or filed with the court. It further ordered the copies returned at the end of the litigation.
{¶ 94} In his appeal, the doctor relied upon R.C. 2317.02, which provides the testimonial privilege of patient and physician communications. The First District Court of Appeals noted that the operative reports were protected by the statute, but it further noted that “the privilege afforded under R.C. 2317.02 is not absolute. The Ohio Supreme Court has held that the discovery of such protected communications may be appropriate under certain circumstances, such as to further a countervailing interest that outweighs the nonparty patient’s interest in confidentiality.” Richards, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 5.
{¶ 95} Regarding the plaintiffs’ primary claim of negligent credentialing, the First District noted, “It is difficult to imagine how else the negligent-eredentialing claim could have been investigated without the disputed documents.” Id. at ¶ 6. Further, the plaintiffs intended to impeach the doctor’s deposition testimony with the documents. It was significant to the First District that the plaintiffs presented their impeachment argument with specificity. Id.
{¶ 96} The First District distinguished the authority upon which the doctor relied, Wozniak v. Kombrink (Feb. 13, 1991), 1st Dist. No. C-89053, 1991 WL 17213. In that case, the plaintiff sought nonparty medical records to impeach the testimony of an expert witness. In reversing the judgment of the trial court, the First District determined that the risk of disclosing the patient’s identity outweighed the benefit to the plaintiff in impeaching the expert, since the plaintiff had “less intrusive means to obtain the same information.” 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, at ¶ 7. In contrast, Richards sought to impeach a party and to develop a primary claim. The First District noted that the trial *420 court protected the identity of the nonparty patients and “specifically weighed the risk of disclosure of this information otherwise protected by R.C. 2317.02 against the plaintiff’s compelling need for the information. ” (Emphasis added). Id. at ¶ 8.
{¶ 97} In Alcorn, Teri Alcorn was allegedly sexually assaulted by another patient in the psychiatric ward of the hospital where she had been admitted due to bipolar disorder. Alcorn, 2006-Ohio-5896, 2006 WL 3231208, ¶ 3. Gerald Alcorn asserted a claim of loss of consortium, and the Alcorns sought the medical records of the alleged attacker, whom they knew. Id. at ¶ 3-4. The Alcorns argued that “their interests in prosecuting their claims outweighed Franciscan’s interest in preserving the physician-patient privilege.” Id. at ¶ 5. After an in camera review, the trial court granted the Alcorns’ motion to compel. Id. at ¶ 5-6.
{¶ 98} On the hospital’s appeal, the Alcorns relied upon Biddle’s “common-law exception to the privilege.” Id. at ¶ 8. The First District quoted Biddle’s holding that a hospital may disclose otherwise privileged records where “ ‘disclosure is necessary to protect or further a countervailing interest that outweighs the patient’s interest in confidentiality.’ ” Id. at ¶ 9. The First District next noted that “[t]he propriety of disclosure is a question of law,” subject to de novo review. Id. The only authority for this proposition of law as noted above was Biddle, which does not hold that the propriety of disclosure is a question of law.
{¶ 99} In reliance upon Fair, the First District determined that “[ajbsent the medical records of the patient, the Alcorns would * * * have been prevented from proving that [the hospital] was aware of the patient’s dangerous proclivities and therefore prevented from establishing a breach of duty on the part of the hospital.” Id. at ¶ 11. The court noted that the trial court took every practical measure to ensure that the records would not be disclosed beyond the requirements for discovery. Id. at ¶ 13.
{¶ 100} The hospital also argued that the scope of discovery was too broad. Again, the First District noted that while “the initial question of privilege was a matter of law, the management of the discovery process was solely within the discretion of the trial court.” Id. at ¶ 15. Notably, no abuse of discretion was found in the granting of the trial court’s discovery order. Id. at ¶ 17.
{¶ 101} In Cepeda, 2008-Ohio-2348, 2008 WL 2058588, the patient filed a multicount complaint against, inter alia, a doctor and his practice, after the doctor allegedly inappropriately and unnecessarily removed her uterus and ovaries. Id. at ¶ 2. The trial court granted the Cepedas’ motion to compel the discovery of billing statements of nonparty patients sent to Medicare and Medicaid and information regarding the doctor’s finances and income. Id. at ¶ 3-4. Defendants appealed, arguing that the billing records were protected by patient *421 privilege and that the financial information sought was unnecessary for the Cepedas to pursue their claims. Id. at ¶ 7.
{¶ 102} The Eighth District Court of Appeals began by noting that the review of the management of the discovery process is subject to an abuse-of-discretion standard, while questions of privilege are subject to de novo review. Cepeda, 2008-Ohio-2348, 2008 WL 2058588, at ¶ 9. Relying on Biddle, the court noted that the privilege provided by R.C. 2317.02 is “not absolute,” noting that “disclosure is permitted in the absence of prior authorization of privileged matters where disclosure is made pursuant to a statutory mandate or common-law duty.” Id. at ¶ 10. Second, “discovery of such protected communications is appropriate to protect or further a countervailing interest that outweighs the non-party patient’s interest in confidentiality.” Id. It was significant to the appellate court that “[s]hielding the identity preserves the objective of the patient-physician privilege while still achieving the public’s interest in justice.” Id. at ¶ 11.
{¶ 103} Analogizing Cepeda to Richards, the court noted that the Cepedas sought defendants’ billing statements to establish the doctor’s alleged motive to supplement his income by performing unnecessary procedures on patients with Medicare or Medicaid. Cepeda, 2008-Ohio-2348, 2008 WL 2058588, at ¶ 16. The court determined that “such information is necessary to further a countervailing interest that outweighs the non-parties’ privilege.” (Emphasis added.) Id. Finally, the court noted that the trial court provided protection against the disclosure of the identity of the nonparty patients and limited dissemination of the discovered material. Id. at ¶ 17.
{¶ 104} In addition, the Eighth District disagreed that the questions regarding the doctor’s finances were irrelevant and an invasion of privacy. The court reiterated, “[W]e review the trial court’s decisions on the management of discovery matters under an abuse of discretion standard. * * * The complaining party must establish a clear and prejudicial abuse of discretion that materially prejudices the party. * * * Absent an abuse of discretion, an appellate court may not overturn the trial court’s ruling on discovery matters.” Cepeda, 2008-Ohio-2348, 2008 WL 2058588, at ¶ 23-24. The court concluded that the “relevancy test pursuant to Civ.R. 26(B)(1) ‘is much broader than the test to be utilized at trial. [Evidence] is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence.’ ” Cepeda, 2008-Ohio-2348, 2008 WL 2058588, at ¶ 29, quoting Tschantz v. Ferguson (1994), 97 Ohio App.3d 693, 715, 647 N.E.2d 507.
{¶ 105} The dissenting opinion in Cepeda asserted that Richards and Fair “seek to broaden Biddle’s holding to apply in any case where disclosure is sought to aid a private lawsuit against a doctor who has been accused of malpractice.” *422 (Emphasis added.) Cepeda, 2008-Ohio-2348, 2008 WL 2058588, at ¶ 31 (Blackmon, J., dissenting). The dissent notes that Biddle used the “balancing of ‘countervailing interest’ test to determine whether a patient’s medical records can be disclosed to third party.” Id. at ¶ 32. The dissent argued that “before a trial court may apply [Biddle’s] balancing test, the trial court and this court must define specially what the plaintiff-patient’s interest is.” Id. According to the dissent, “the Majority Opinion has joined the more relaxed understanding of Biddle and found a judicially created right of injured patients to obtain non-party patients’ privileged confidential medical information to punish a wrong inflicted by the patient’s doctor.” (Emphasis added.) Id. at ¶ 34 (Blackmon, J., dissenting). The dissenting judge prefers “remedies * * * which would not destroy the nonparty patients’ privacy” over what was characterized as the “super attorney general” concept espoused by the majority in Richards and Fair. Id.
{¶ 106} Perhaps it is the language of the dissent in Cepeda that leads the majority to conclude that Biddle has been interpreted by appellate courts as creating a right to privileged information, but a close reading of these cases reveals that the trial courts conducted a proper weighing of countervailing interests and did not find an absolute right to confidential records. These courts merely recognized the narrow exception for special circumstances, as should be permitted under Biddle.
{¶ 107} The majority herein overlooks the fact that redacting the documents to remove all patient-identifying information (only of those who are children, as is Jane) preserves the purpose of the privilege. The privilege should terminate where the public peril begins, whether uncovered by an individual plaintiff, class of plaintiff, prosecuting attorney, or attorney general. The privilege should not be absolute and should yield to the reporting requirements of the child-abuse-reporting statutes. The privilege should be construed narrowly because it is in derogation of the search for truth.
{¶ 108} The majority also mistakenly relies on Jackson v. Greger, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487 (rejecting the three-part test for implied waiver of attorney-client privilege articulated in Hearn v. Rhay (E.D.Wash.1975), 68 F.R.D. 574), to reverse the trial court’s order requiring Planned Parenthood to produce the redacted medical records. The majority does so in a conclusory statement suggesting that any exceptions to the physician-patient privilege are for the General Assembly to address. This statement ignores that what the Roes seek is not an exception to physician-patient privilege, but redacted records that violate no privilege. Once any personal information identifying the patients is redacted from the records, the requested discovery will not invade the physician-patient privilege. Jackson, a case involving the attor *423 ney-client privilege, does not implicate the production of medical records under the protective order in this case.
{¶ 109} In Jackson, a client sued her criminal-defense attorney for legal malpractice after a court concluded that the client’s guilty plea to the criminal charge precluded, based on collateral estoppel, her claim under Section 1983, Title 42, U.S.Code against the city and officers who arrested her. Id., 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 4. During discovery in the malpractice suit, the attorney sought all attorney-client privileged information from the Section 1983 action. Id. The trial court granted the attorney’s motion to compel, and the appellate court reversed, applying the Hearn test and determining that the client had not impliedly waived privilege. Id. at ¶ 5. On appeal, this court affirmed, holding that R.C. 2317.02 was the exclusive means by which the client’s conduct could waive the attorney-client privilege. Id. at paragraph one of the syllabus.
{¶ 110} Jackson did not cite or address, much less question, the validity of the previous holding in Biddle that special situations may occur in which the interests of a patient, physician, third party, or the public may outweigh the patient’s privilege in protecting his or her medical records. In fact, recently, this court analyzed and favorably applied Biddle in Hageman v. Southwest Gen. Health Ctr., 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, ¶13. Thus, as demonstrated by Hageman, Jackson’s conclusion that judicially created exceptions to statutory privileges are disfavored should not affect the holding in Biddle. Indeed, Jackson did not suggest that this court would no longer recognize public-policy exceptions designed to protect other countervailing interests.
{¶ 111} Further, Jackson is distinguishable from Biddle and its progeny in that Jackson dealt with the manner in which the holder of the privilege could waive the privilege through his or her own conduct. Biddle and its progeny have not hinged on whether the conduct of nonparty patients waived privilege; rather, these cases weighed the competing interests at stake to determine whether the privileged information should be disclosed.
{¶ 112} Although the majority concludes that a narrow construction of Biddle compels nondisclosure, I disagree. The privilege asserted by Planned Parenthood is in derogation of the common law, which must be strictly construed against it. The Roes have set forth claims that constitute special circumstances necessitating disclosure. The third-party/nonparty’s privacy rights are not invaded or imperiled with the proper redactions. Redactions can be achieved using the proper HIPAA (Health Insurance Portability and Accountability Act) standards to ensure patient confidentiality. The trial court ordered and can continue to take every reasonable and practical measure to ensure that the patients’ *424 records will not be disclosed beyond the requirement of discovery. An additional safeguard is the sealing of the records and a confidentiality order imposed upon the parties.
{¶ 113} Lost in all this debate is the fact that the confidentiality of patient records is for the protection of the patient, not the physician. (And in this case, we are talking exclusively about children, those under the age of 18 who may be the victims of sexual exploitation.) The defendants should not be permitted to frustrate a civil suit questioning their professional conduct (or lack thereof) by asserting the physician-patient privilege.
{¶ 114} On this record, both a private and public interest justified compelling discovery. The Roes, as parents of Jane, a 14-year-old child, have the right to pursue multiple claims for injury and breach of multiple statutory duties. An individual plaintiff or plaintiffs should be permitted the opportunity to discover records that may demonstrate a pattern of ignoring and/or turning a blind eye to child abuse. Such redacted records may indeed bear a direct relation to the issue of whether Planned Parenthood’s conduct was x-eprehensible, thus warranting punitive damages. Should the Roes’ lawsuit x-eveal or expose such a pattern, the public derives a benefit simultaneously by learning of, and demanding accountability for, medical providers who fail to protect vulnerable children from sexual predators.
{¶ 115} The appellate court expressed concern that this case may present a situation wherein a jury may decide to punish Planned Parenthood for harm caused to nonparties. See Philip Morris USA v. Williams (2007), 549 U.S. 346, 127 S.Ct. 1057, 166 L.Ed.2d 940. This concern clearly places the cart before the horse. We are now addressing only discovery, not admissibility.
{¶ 116} Nevertheless, harm to nonparties may be considered by jurors for the limited purpose of helping them decide whether Planned Parenthood showed a conscious disregard for the rights and safety of other persons that had a great probability of causing substantial harm. The majority in Philip Morris recognized that “[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk * * * to the general public, and so was particularly reprehensible * * *.” Philip Morris, 549 U.S. at 355, 127 S.Ct. 1057, 166 L.Ed.2d 940. A recognized and principal goal of punitive damages is to deter future reprehensible conduct.
{¶ 117} This difference was not overlooked by Justice Stevens, who expressed befuddlement at the distinction drawn by the majority in Philip Moms between punishing a defendant based on harm to nonparties (not allowed) and considering the scope of wrongdoing in determining the reprehensibility. Philip Morris, 549 U.S. at 359, 127 S.Ct. 1057, 166 L.Ed.2d 940 (Stevens, J., dissenting). Repeated breaches of the duty to report (or a complete failure to report sexual abuse) *425 under R.C. 2151.421 would be admissible under Ohio Evid.R. 404(B) to demonstrate “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” This is a simple recognition that “conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few.” Id. at 357.
{¶ 118} The majority also concludes that punitive damages are not recoverable under former R.C. 2151.421. In doing so, the majority suggests that Campbell v. Burton (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, did not discuss damages, just liability, and that R.C. 2744.02 and 2744.03, 149 Ohio Laws, Part II, 3500, 3508, 3510, effective April 9, 2003, limit the court’s expansive interpretation of the word “liability” to civil liability only when expressly imposed by a section of the Revised Code. The obvious difficulty with this conclusion, in my view, is that these revisions of R.C. 2744.02 and 2744.03 address the liability of a political subdivision for injury or death. This case has clearly not been brought against a political subdivision. All defendants are either private individuals or a private corporation, Planned Parenthood.
{¶ 119} Additionally, the majority concludes that because there was no common-law duty to report child abuse, the statute that created the duty, having not explicitly authorized damages for its breach, cannot allow for punitive damages. I believe that first, this conclusion completely overlooks the legislative intent in creating the statute and its amendments, to wit: the protection of vulnerable, victimized women and children. The legislative intent is clearly to prevent further injury, crime, and exploitation.
{¶ 120} The majority opinion overlooks basic principles and characteristics of tort law. It is a basic principle of torts that “liability is based upon the relation of persons with others.” Prosser & Keeton, Law of Torts (5th Ed.1984) 5. “Torts consists of the breach of duties fixed and imposed upon the parties by the law itself.” Id. “The tort-feasor usually is held liable for acting * * * in a way that departs from a reasonable standard of care.” Id. at 6. “[T]he law of torts is concerned * * * with acts which are unreasonable, or socially harmful, from the point of view of the community as a whole.” Id. at 7. The Roes assert a violation of duty owed to them and their minor child, Jane, and the duty arises by both operation of law and the defendant’s relationship to Jane.
{¶ 121} Planned Parenthood argues, and the majority holds, that there is no right to punitive damages under R.C. 2151.421 because punitive damages were not expressly provided for in R.C. 2151.99, and the amended sections are unconstitutional. Yet whoever violates R.C. 2151.421(A) is guilty of a misdemeanor of the fourth degree. When the claimed wrong partakes of a criminal nature, the wrongdoer should be brought to justice in a civil suit. Punitive damages do not rest on some abstract concept of justice, but upon sound public *426 policy, which in this instance seeks to promote the safety and health of children and encourage reporting of abuse. We must take into account the importance of the underlying public policy jeopardized by a mandatory reporter’s failure to report. As Justice Stevens noted in his dissent in Philip Morris, “There is little difference between the justification for a criminal sanction, such as a fine or a term of imprisonment, and an award of punitive damages.” Id. at 359, 127 S.Ct. 1057,166 L.Ed.2d 940 (Stevens, J., dissenting).
{¶ 122} It cannot be overlooked that the Roes have also alleged malice and wanton disregard for their rights and those of their minor child, Jane. In cases in which malice is shown, the right to punitive damages is a rule so deeply rooted in Ohio law that this court should not be permitted to carve out an exception thereto governing claims brought under former R.C. 2151.421. Punitive damages have always been two sides of the same coin, one of which is punitive, criminal, and public, and the other of which is in substance private and civil. Criminal statutes should serve as guideposts for the imposition of civil tort duties.
{¶ 123} Further, sections R.C. 2151.421(G) and the former (H) support a finding that a civil remedy for punitive damages is available. These sections, by recognizing a civil immunity for “whistleblowers” — i.e., reporters under the statute — do by implication recognize a right to civil redress, including punitive damages against those mandatory reporters who fail to report known or suspected abuse. This reading of the statute recognizes that each section should be construed in connection with every other part or section to promote a harmonious whole. The ultimate inquiry is to ascertain the legislative intent. Here, that intent is to encourage reporting, provide civil immunity for those who make a false report in good faith, and also hold liable those who fail in their duty to protect children such as Jane who are victims of sexual predators. In my view, this intent was clear even before H.B. 280. We should presume that the General Assembly did not intend the absurd results from the operation of the statute reached by the majority, which in effect shields nonreporters.
{¶ 124} Jane is certainly a member of the class that the statute is designed to protect. The underlying purpose of the statute is to afford her the full panoply of civil damages when a breach is established. A medical provider, regardless of the area in which the individual physician specializes, obviously has a fiduciary relationship with his or her patient warranting compliance with the standard of care required of all physicians in the medical community at large. Although the majority concludes that there was no common-law duty to report child abuse, there has always been a common-law duty to report serious crime. Child abuse, sexual battery, and rape are serious crimes.
{¶ 125} The majority opinion rendered today does more to protect the adult defendants (i.e., Planned Parenthood) than sexually abused children. The opinion *427 likewise undermines parents’ rights to protect their minor children and to guide their medical treatment. The trial court properly exercised its discretion and granted discovery to the Roes so that they might pursue their claims. Mandatory reporting must be encouraged, expected, and demanded. The Roes should not be effectively denied the opportunity to seek remedies the law affords them. R.C. 1.47(C) provides: “In enacting a statute, it is presumed that: * * * A just and reasonable result is intended.” The result today is neither just nor reasonable.
Crabbe, Brown & James, L.L.P., Brian E. Hurley, and Robert J. Gehring; Keating, Muething & Klekamp, P.L.L., Richard L. Creighton Jr., William A. Posey, and Charles M. Miller; and White, Getgey & Meyer Co., L.P.A., and Nicholas E. Bunch, for appellants.
Vorys, Sater, Seymour & Pease, L.L.P., Daniel J. Buckley, Michael R. Thomas, John J. Kulewicz, Suzanne K. Richards, Dorothea K. Langsam, Maureen P. Tracey, Jacob D. Mahle, Alexandra T. Shimmer, and Barbara Bison Jacobson, for appellees.
Joseph T. Deters, Hamilton County Prosecuting Attorney, and William E. Breyer, Chief Assistant Prosecuting Attorney; Rachel A. Hutzel, Warren County Prosecuting Attorney; and Donald W. White, Clermont County Prosecuting Attorney, urging reversal for amici curiae Joseph T. Deters, Hamilton County Prosecuting Attorney, Rachel A. Hutzel, Warren County Prosecuting Attorney, and Donald W. White, Clermont County Prosecuting Attorney.
Kirkpatrick Law Offices, P.C., and Joel J. Kirkpatrick; and Mañee K. Smith, urging reversal for amici curiae members of the U.S. Congress from the State of Ohio.
Langdon Law, L.L.C., and David R. Langdon; and Alliance Defense Fund and Jeffrey A. Shafer, urging reversal for amici curiae Dr. and Mrs. Jack Willke, Center for Bioethical Reform, Center for Bioethics at Cedarville University, Citizens for Community Values, Citizens Media Group, Cleveland Lawyers for Life, Cleveland Right to Life, Columbus Right to Life, Dayton Right to Life, Family First, Healthy Beginnings, Institute for Principled Policy, Life Issues Institute, Mission: American, NE Ohio Values Voters, Ohio Christian Alliance, Ohio Governmental Prayer Alliance, Ohio Right to Life, Pregnancy Center East, Pregnancy Center West, Right to Life of Butler County, Right to Life of Greater Cincinnati, Sanctity of Life Foundation, The Reach Out Pregnancy Center, Touch the World Ministries, Warren County Right to Life, The Way of Love, and Women Influencing the Nation.
*428 Bricker & Eckler, L.L.P., Anne Marie Sferra, and Bridget Purdue, urging affirmance for amici curiae the Ohio State Medical Association, the American Medical Association, and the American College of Obstetricians and Gynecologists.
Katz, Teller, Brant & Hild L.P.A., and Laura A. Hinegardner, urging affirmance for amicus curiae the Ohio Psychological Association.
Collis, Smiles & Collis, L.L.C., Terri-Lynne B. Smiles, and Elizabeth Y. Collis, urging affirmance for amicus curiae the Ohio Psychiatric Physicians Association.
American Civil Liberties Union of Ohio Foundation, Inc., Carrie L. Davis, and Jeffrey M. Gamso, urging affirmance for amici curiae Ohio Chapter of the American Academy of Pediatrics, Ohio Academy of Family Physicians, Society for Adolescent Medicine, National Association of Social Workers, National Center for Youth Law, Center for Adolescent Health & The Law, Ohio Now Education and Legal Fund, Ohio Domestic Violence Network, Action Ohio Domestic Violence, Break The Cycle, and Weave, Inc.