[Cite as *Camacho v. Rose-Mary, Johanna Graselli Rehab., Inc.*, 2024-Ohio-2802.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CHRISTINA CAMACHO, :

    Plaintiff-Appellee, :

                            No. 112793

    v. :

ROSE-MARY, JOHANNA :
GRASSELLI REHABILITATION,
ET AL., :

    Defendants-Appellants. :

---

#### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 25, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-955752

---

### *Appearances:*

Rittgers Rittgers & Nakajima, Gus J. Lazares, Wesley M. Nakajima, and Charlie M. Rittgers, *for appellee.*

Tucker Ellis LLP and Jonathan R. Cooper, Kevin M. Young, Lindsey E. Sacher, and C. Ashley Saferight, *for appellant* Rose-Mary, The Johanna Grasselli Center.

LISA B. FORBES, P.J.:

{¶ 1} Defendants-appellants, Rose-Mary, the Johanna Grasselli Rehabilitation & Education Center, Inc., d.b.a. Rose-Mary Center, Catholic

Charities Corporation d.b.a. Catholic Charities Diocese of Cleveland, and Bishop Edward C. Malesic (collectively "Rose-Mary"), appeal from a discovery order requiring them to respond to discovery requests propounded by plaintiff-appellee, Christina Camacho ("Camacho") individually and as personal representative of the estate of Jared Camacho ("Jared"). Rose-Mary argues that certain discovery requests at issue call for the release of information protected by a physician-patient privilege and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and no exception exists to support the release of this information. Rose-Mary argues that the trial judge erred in ordering the release of these protected records and information. We affirm the trial court's order because Rose-Mary has not established that any responsive information or document within its possession or control is subject to any privilege such that they would be protected from discovery.

## I. Facts and Procedural History

{¶ 2} Camacho sued Rose-Mary for its actions that allegedly caused the death of Jared. On November 12, 2021, Camacho filed a complaint individually and as administrator of Jared's estate, claiming that Jared was entrusted to the care of a children's group home operated by Rose-Mary. In June 2019, Jared was an 11-year-old boy who had previously been diagnosed with autism spectrum disorder. On June 5, 2019, Jared took up residence at Rose-Mary Ridgewood Home, a group residential facility operated by Rose-Mary. The complaint alleged that staff at the residential facility physically abused Jared on January 28, 2020, and September 10,

2020. According to the complaint, these instances were investigated, and the allegations were substantiated by the Cuyahoga County Board of Developmental Disabilities. The complaint further alleged that Rose-Mary staff left Jared unattended in an open gymnasium at the facility, allowing him to wander outside, unsupervised. Tragically, he was struck by a car and killed.

{¶ 3} The complaint asserted claims for wrongful death and personal injury and sought compensatory and punitive damages. Camacho engaged in discovery, propounding her first set of requests for admissions, requests for production of documents, and interrogatories. On March 10, 2022, Camacho filed an amended complaint adding the Catholic Charities of Cleveland and Bishop Edward C. Malesic of the Catholic Diocese of Cleveland as defendants. Answers were filed and Camacho propounded a second set of discovery requests.

{¶ 4} Discovery disputes arose, and pertinent to the present appeal, Camacho filed a motion to compel on November 17, 2022, seeking responses to interrogatories Nos. 2, 20, and 54; requests for production of documents Nos. 20 through 30, 33, 34, 36, 37, 39, 42, 48, 53, 54, 56, 57, 58, 59, 62, 71, 79, 80, 81, 95, 98, 99, and 100; and requests for admissions Nos. 1, 4, 6, 8, 9, 12, 14, 16, 17, 18, 19, 20, 28, 34, 40, and 56. Rose-Mary opposed the motion and sought a protective order. Rose-Mary argued, among other things, that interrogatory No. 20; requests for production of documents Nos. 79, 80, 95, 98, and 99; and request for admission No. 6 sought privileged information.

{¶ 5} On December 22, 2022, Camacho filed a second motion to compel seeking to compel responses to interrogatories Nos. 21 and 23, and requests for production of documents Nos. 2, 38, 51, 60, 88, 89, 90, 91, 96, 97, and 98 from the original discovery requests; the entire second set of interrogatories and requests for documents sent to the original defendants in the case; and responses to discovery requests sent to the new party defendants. The motion alleged that Rose-Mary responded to several interrogatories and document requests with denials based on, among other reasons, privilege, and that Rose-Mary only partially responded to other discovery requests. Rose-Mary refused to provide a privilege log identifying and describing each document it claimed was privileged, and refused to produce redacted documents. Rose-Mary again filed a brief in opposition.

{¶ 6} On May 4, 2024, the trial court, without exposition, issued an order granting in part Camacho's first and second motions to compel. The court ordered Rose-Mary to provide responses to the following discovery requests: "[Camacho's] first set of interrogatories numbers 2, 20, 21, and 23. [Camacho's] first request for production of documents numbers 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, 33, 34, 38, 42, 48, 51, 53, 54, 56, 57, 58, 59, 60, 62, 71, 79, 80, 88, 89, 90, 91, 96, 97, 98, 99, and 100." The trial court denied Camacho's motions regarding a few specific requests for production of documents and denied the motion to compel responses to the requests for admissions in their entirety.

{¶ 7} Rose-Mary filed the instant appeal raising a single assignment of error:

The trial court erred in granting plaintiff's motion to compel that forces defendants to produce personal medical information of non-party minor residents protected by the physician-patient privilege, the Health Insurance Portability and Accountability Act, R.C. 3798.04 and the Ohio Supreme Court case of *Roe v. Planned Parenthood Southwest Ohio*, [2009-Ohio-2973].

**A. Scope of the Appeal**

{¶ 8} Not all the discovery requests outlined in the trial court's order to compel are the subject of this appeal. Rose-Mary argued to the trial court below that the following discovery requests sought protected and/or privileged information: interrogatory No. 20; requests for production of documents Nos. 79, 80, 95, 98 and 99; and request for admission No. 6. Notably, the trial court's order did not compel responses to request for production of document No. 95 or request for admission No. 6.

{¶ 9} Rose-Mary's appellate brief does not specify which discovery requests they challenge on appeal. In the combined statements of the case and facts, Rose-Mary notes that "[r]elevant to this appeal," Comacho's first set of discovery requests "sought 'all incidents involving allegations of investigations of abuse . . .,' a privilege log, all documents 'related to any inquiries of investigation . . . from 2010 to present[,]' the 'supervision and care needs of every resident[,]' and 'all documentation of incidents involving allegations of abuse,'" citing the following discovery requests: request for admission No. 6; interrogatory No. 20; and requests for production of documents Nos. 78, 79, 80, 95, 98 and 99. According to Rose-

Mary, the requested information and documents are protected from discovery by "HIPAA, R.C. 3798.01, general privacy considerations and Ohio case law."

{¶ 10} In its substantive legal argument, Rose-Mary quotes a portion of the request for production of documents No. 98. This document request sought documents pertaining to incidents involving allegations of abuse and other mistreatment.

{¶ 11} Rose-Mary also asserts that, "[p]laintiff requested documentation of all incidents, investigations, and accidents from 2010 through 2020. Specifically, she requested accidents and investigations involving allegations of abuse, neglect, mistreatment, physical injury, death or safety violations." (T.d. 92 at pg. 10.) Though Rose-Mary did not specify which discovery requests they were referring to, we note that request for production of documents No. 51 sought, among other things, documents related to the number of allegations of abuse at the facility; request for production of documents No. 99 sought the production of documents pertaining to any investigations conducted by governmental entities; and, interrogatory No. 20 asked for information related to incidents and investigations into allegations of abuse, neglect and other forms of mistreatment.

{¶ 12} In the brief of appellee, Camacho argues that three discovery requests are before this court on appeal: interrogatory No. 20, and requests for production of documents Nos. 51 and 98. Camacho's assertion is derived from the motion for stay Rose-Mary filed with the trial court and principles of judicial estoppel and judicial admission. Rose-Mary's motion for stay pending appeal filed in the trial court on

May 30, 2023, sought to stay responses to four discovery requests: interrogatory No. 20, and requests for production of documents Nos. 51, 74, and 98. (Docket No. 118.) Rose-Mary's motion provides, "[Rose-Mary has] no objection to continuing with the discovery in this matter and progressing this litigation. [Rose-Mary] merely requested that this Court Stay discovery only with respect to Interrogatory No. 20, and Requests for Production of Documents Nos. 51, 74, and 98 that are currently the subject of an interlocutory appeal." Rose-Mary did not seek a stay related to its response to request for production of documents No. 99. Though a stay was requested regarding request for production of document No. 74, that request is not referred to in Rose-Mary's appellate briefing, either by number or by substance. Rose-Mary did not further seek to stay discovery in this court.

{¶ 13} On reply, Rose-Mary does not dispute that the three discovery requests identified by Camacho are the only three at issue in this appeal. Nevertheless, during oral argument before this court, Rose-Mary asserted that on appeal, they are challenging the trial court's order compelling discovery as it relates to interrogatory No. 20, and requests for production of documents Nos. 51, 98, and 99.

{¶ 14} Despite these issues and Rose-Mary's failure to clearly delineate which discovery requests are the subject of this appeal, we will review the following discovery requests:

> interrogatory No. 20: Identify any and all incidents involving allegations or investigation of abuse, neglect, mistreatment, physical injury, death or safety violations related to any child under your

supervision from 2010 through September 2020 and identify the person(s) responsible for conducting the investigation(s) and the person(s) who participated in the investigation(s). This interrogatory includes any internal investigations by Rose-Mary.

request for production of documents No. 51: Please produce a copy of all e-mail transmissions from the administrator of the facility to any corporate employee, agent, or representative, or from any corporate employee, agent, or representative to the administrator of the facility concerning staffing issues at the facility during the residency and six months prior to the residency of Jared Camacho. This request specifically seeks e-mails related to lack of staff and/or the effect of lack of staff on resident care, including e-mails related to the high number of abuse, or escape incidents at the facility. (Defendant may redact the names of residents other than Jared Camacho.)

request for production of documents No. 98: Please produce any and all documentation of incidents involving allegations of abuse, neglect, or safety violations related to, referring to, or referencing physical injury or death of a child that was at a Rose-Mary facility from 2010 to the present.

request for production of document No. 99: Produce any and all documents received by you or anyone on your behalf or sent by you or on your behalf related to any inquiries or investigation by a governmental agency concerning a resident or residents including [J.C.] at any Rose-Mary Facility from 2010 to the present related to, reference, memorializing or investigating safety, abuse, neglect, mistreatment, lack of supervision, inadequate supervision, lack of staffing, inadequate staffing, inadequate training, lack of training, the facility's physical environment, quality of care provided to residents.

{¶ 15} In response to each of these requests, Rose-Mary included the same language asserting that a privilege existed: "Moreover, this Interrogatory seeks information regarding the care of other non-party minor residents in violation of the Health Insurance Portability and Accountability Act ('HIPAA') and *Roe v. Planned Parenthood Southwest Ohio Region*, [2009-Ohio-2973]."

## II. Law and Analysis

### A. Standard of Review

{¶ 16} Pursuant to Civ.R. 26(B)(1), parties may obtain discovery regarding any matter, not privileged, "that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." According to the rule, when information is withheld based on privilege, "the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Civ.R. 26(B)(8). "The burden of showing that testimony or documents are confidential or privileged rests upon the party seeking to exclude it." *Medina v. Medina Gen. Hosp.*, 2011-Ohio-3990, ¶ 9 (8th Dist.), citing *Lemley v. Kaiser*, 6 Ohio St.3d 258, 263-264 (1983).

{¶ 17} Generally, a trial court's decision involving a discovery dispute is reviewed for an abuse of discretion. *Id*. at ¶ 9. However, where the matter under review is a question of privilege, appellate courts apply a de novo standard of review. *Id.*, citing *Roe*, 2009-Ohio-2973, at ¶ 29. "De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. McCullough*, 2018-Ohio-1967 (8th Dist.).

### B. Ohio and Federal Protection of Health Information

{¶ 18} In the present appeal, Rose-Mary argues that discovery responses to the relevant requests seek information protected by R.C. 2317.02(B) (the physician-patient privilege) and HIPAA. They also argue the Supreme Court of Ohio's decision

in *Roe*, interpreting these state and federal protections, makes disclosure inappropriate.

### 1. HIPAA

{¶ 19} Generally, medical records are privileged from disclosure under state and federal law. *Med. Mut. of Ohio v. Schlotterer*, 2009-Ohio-2496, ¶ 14. HIPAA, among other things, prohibits the unauthorized disclosure of "protected health information" by a "covered entity." Both terms are statutorily defined under federal regulations and Ohio statute.[1] "Protected health information" is defined as individually identifiable health information that is transmitted or maintained electronically or in any other form or medium. 45 C.F.R. 160.103. "Health information" is defined as

> any information, including genetic information, whether oral or recorded in any form or medium, that:
>
> (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and
>
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.

*Id. See also* R.C. Ch. 3798 (Ohio's codification of HIPAA regulations). A "covered entity" is defined in part to include "a health care provider who transmits any health information in electronic form in connection with a transaction covered by this

---

[1] R.C. Ch. 3798 codifies into state law the regulations promulgated under HIPAA. R.C. 3798.02.

subchapter." *Id.* Finally, a "health care provider" means "a provider of services (as defined in section 1861(u) of the Act, 42 U.S.C. 1395x(u)), a provider of medical or health services (as defined in section 1861(s) of the Act, 42 U.S.C. 1395x(s)), and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business."

{¶ 20} "'[T]he HIPAA Privacy Rule strives to balance the interest of individuals in maintaining the confidentiality of their health information with the interests of society in obtaining, using, and disclosing health information to carry out a variety of public and private activities.'" *Menorah Park Ctr. for Senior Living v. Rolston*, 2020-Ohio-6658, ¶ 19, quoting Tovino, *A Timely Right to Privacy*, 104 Iowa L.Rev. 1361, 1367 (2019). To this end, HIPAA contains a provision that allows the release of protected health information pursuant to court order. 45 C.F.R. 164.512; *Loparo v. Univ. Hosps. Health Sys.*, 2024-Ohio-663, ¶ 24 (8th Dist.), citing *Grove v. Northeast Ohio Nephrology Assocs. Inc.*, 2005-Ohio-6914 (9th Dist.). Further, health information that has been properly "de-identified" may be released under the circumstances outlined in 45 C.F.R. 164.502(d).

### 2. R.C. 2317.02(B)

{¶ 21} In Ohio, R.C. 2317.02(B) provides a more stringent level of protection for communications between a physician and a patient made for the purposes of medical diagnosis and treatment. *Rolston* at ¶ 28-30; *Loparo* at ¶ 19. Where the privilege applies, with only limited statutory exception, the disclosure of medical records is prohibited. However, "[a] request is not seeking privileged information

under the statute if it does not involve something that the patient communicated to the physician or vice versa." *Medina*, 2011-Ohio-3990, at ¶ 13 (8th Dist.), citing *Turk v. Oiler*, 732 F.Supp.2d 758 (N.D.Ohio 2010). Even then, not all communications between patients and physicians are privileged. R.C. 2317.02(B)(5) defines a covered communication:

> "[C]ommunication" means acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician, advanced practice registered nurse, or dentist to diagnose, treat, prescribe, or act for a patient. A "communication" may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis.

{¶ 22} Based on these statutory definitions, "[t]he conclusion that protected health information is privileged depends on two factors: [first], whether the information is a communication between a patient and their healthcare provider, and [second], whether the purpose of the communication was for diagnosis or treatment." *Loparo* at ¶ 15, citing *Ward v. Summa Health Sys.*, 2010-Ohio-6275, ¶ 25. If the party seeking to assert the privilege does not establish either of these factors, then it is not error to compel discovery of the information. *Id.* at ¶ 22, citing *Morawski v. Davis*, 2023-Ohio-1898, ¶ 16 (8th Dist.); *Zimpfer v. Roach*, 2016-Ohio-5176, ¶ 27 (3d Dist.).

### 3. *Roe*, 2009-Ohio-2973

{¶ 23} Rose-Mary also argues that Comacho's discovery requests seek medical records of individuals who are not parties to this suit; that in *Roe*, the Ohio Supreme Court categorically prohibited the discovery of the medical records of third

parties; and that *Roe* further established that the redaction of personally identifiable information does not remove the privileged status of the records.

{¶ 24} In *Roe*, the plaintiffs sought discovery of "any reports of abuse made pursuant to R.C. 2151.142 and the medical records of nonparty minors who had been patients at [defendant] Planned Parenthood during a ten-year period." The parties did not dispute that the discovery requests sought medical records. The Court addressed whether confidential abuse reports and medical records were privileged under the physician-patient privilege and a prior version of a statute that required medical professionals to report child abuse codified in R.C. 2151.421(H)(1). *Roe* at ¶ 53. The Court held that the documents at issue were not subject to disclosure in the action. *Id*. The Court has also held that there is no "absolute protection against disclosure of medical information." *Ward* at ¶ 30.

{¶ 25} Since the decision in *Roe* was announced in 2009, this court has had numerous opportunities to analyze its holding and apply it to the facts of various discovery disputes. This court characterized the holding in *Roe* as follows:

> In *Roe*, the parties stipulated that the disputed discovery included privileged communications within nonparty medical records. The plaintiffs sought patients' actual medical records with the protected health information redacted. "Medical record" means data in any form pertaining to a patient's medical history, diagnosis, prognosis, or medical condition generated and maintained by a health care provider in the process of the patient's health care treatment. R.C. 3798.01 and 45 C.F.R. 160.103. Redaction cannot overcome a privilege protection; only a statutory exception can. *Roe* at ¶ 53.

*Loparo,* 2024-Ohio-663, at ¶ 26 (8th Dist.). This court went on to find that not all information contained within a given medical record constitutes privileged

information. We held that "health information, such as provider names, triage priority data, and time data (ex., triage times, discharge times, and treatment times), are not privileged because they do not involve communications as defined in R.C. 2317.02." *Id.* at ¶ 30.

{¶ 26} This court again looked to *Roe* for guidance in considering whether HIPAA or Ohio's physician-patient privilege protected "identification of [defendant doctor's] conduct" where the discovery requests did not, on their face, "seek the disclosure of nonparty patient's confidential medical records." *Medina,* 2011-Ohio-3990, at ¶ 14 (8th Dist.). There, this court examined interrogatories that did not call for "the disclosure of any nonparty information;" rather, the interrogatory sought information about a particular anesthesiologist and records of procedures the anesthesiologist may have performed and documented. The *Medina* Court distinguished *Roe,* finding that the discovery requests at issue did not seek privileged information. *Id.* at ¶ 14-15. The requests sought information that was contained within certain records that included medical records, but it was not privileged information under the physician-patient privilege or protected health information under HIPAA. *Id.*

### C. Application of these Standards to this Case

{¶ 27} Applying the above statutes and standards to the specific requests at issue in this case, we find that Rose-Mary has not established that the trial court erred in granting Camacho's motion to compel because Rose-Mary has not established that responsive information is privileged.

{¶ 28} Interrogatory No. 20 asked Rose-Mary to identify any allegations or investigations of abuse during a ten-year period and identify those that participated in the investigation. Request for production of documents No. 51 sought emails between Rose-Mary administration and others regarding staffing levels. Request for production of documents No. 98 sought documents related to incidents of "allegations of abuse, neglect, or safety violations related to, referring to, or referencing physical injury or death of a child that was at a Rose-Mary facility from 2010 to the present." Finally, request for production of documents No. 99 sought documents related to any governmental investigation into allegations of abuse at Rose-Mary facilities. These requests seek the disclosure of any investigations of allegations of mistreatment of residents, documents related to those investigations and the names of those involved in the investigations, and administrative emails regarding staffing levels.

{¶ 29} Importantly, it is not at all clear that Rose-Mary even knows whether they have any information responsive to discovery requests that are privileged. In their appellate brief, Rose-Mary asserts that nonparty residents have an expectation of privacy in their medical records. At oral arguments, Rose-Mary argued that even a review of records to create a privilege log would violate their residents' rights of privacy. However, in other cases where a physician-patient privilege was asserted over records of third parties, the litigants were still able to generate a privilege log in compliance with Civ.R. 26(B). *See, e.g., Dubson v. Montefiore Home*, 2012-Ohio-2384, ¶ 18 (8th Dist.) (discovery of medical records of nonparty employees held by

employer); *Howell v. Park E. Care & Rehab.*, 2019-Ohio-3283, ¶ 30 (8th Dist.) (Discovery of records of a nonparty alleged tortfeasor and noting that a privilege log was submitted in this case dealing with the release of records alleged to be privileged under HIPAA, R.C. 2317.02, and others). Rose-Mary has not put forth any legitimate justification to excuse the production of a privilege log in compliance with Civ.R. 26(B).

{¶ 30} Rose-Mary has not shown that these requests seek information that is privileged under R.C. 2317.02(B). Rose-Mary's responses to these discovery requests were general claims that information sought constituted privileged medical records. The discovery requests involved in this appeal do not, on their face, seek protected information. No particularized information was adduced that would afford the trial court with the necessary information to establish that responsive records within Rose-Mary's possession required the disclosure of communications with doctors, dentists, or advanced practice registered nurses for the purpose of diagnosis or treatment. The requests seek emails between administrators about staffing and information related to incidents of abuse, neglect, mistreatment, physical injury, or safety violations concerning residents of Rose-Mary facilities.

{¶ 31} "'Medical record' means data in any form pertaining to a patient's medical history, diagnosis, prognosis, or medical condition generated and maintained by a health care provider in the process of the patient's health care treatment." *Loparo,* 2024-Ohio-663, at ¶ 26 (8th Dist.), citing R.C. 3798.01 and 45 C.F.R. 160.103. Rose-Mary has not established that any of the discovery requests

seek medical records as that term is defined. For instance, the names of those Rose-Mary employees involved in investigations of abuse, even physicians, would not ordinarily be privileged. *Medina,* 2011-Ohio-3990, at ¶ 13 (8th Dist.), citing *Turk,* 732 F.Supp.2d 758, citing *Ingram v. Adena Health Sys.,* 2002-Ohio-4878 (4th Dist.); *Hudson v. United Servs. Auto. Assn. Ins. Co.,* 2008-Ohio-7084 (C.P.).

{¶ 32} Where responses to these requests may contain communications between covered health care professionals, Rose-Mary must establish that the communications within any given responsive record are subject to a privilege. *Loparo* at ¶ 22. "If an individual makes statements to a physician or psychologist for purposes other than diagnosis or treatment, such statements are not protected by the privilege." *Skorvanek v. Ohio Dept. of Rehab. & Correction,* 2018-Ohio-3870, ¶ 57 (10th Dist.), citing *In re Jones,* 2003-Ohio-3182, ¶ 13. Reporting abuse to staff members of a residential facility is not necessarily a communication for the purpose of diagnosis and treatment. Rose-Mary must demonstrate that the privilege applies to responsive information in its possession. Rose-Mary has not done so.

{¶ 33} Rose-Mary made blanket assertions that what Camacho seeks is covered by privilege. Blanket assertions that discovery responses are privileged are insufficient to meet the burden of establishing the existence of a privilege. *Muehrcke v. Housel,* 2005-Ohio-5440, ¶ 20 (8th Dist.) (finding that a blanket assertion of attorney-client privilege without even requesting an in camera inspection was

insufficient to meet the burden of establishing that the documents at issue were privileged).

{¶ 34} As noted, the discovery requests do not, on their face, seek privileged information and Rose-Mary's failure to establish that any of the relevant discovery requests seek privileged information also means that *Roe* is inapplicable to this case. *Roe* held that privileged information contained within medical records of third parties was not subject to discovery absent a statutory exception and redacting certain information did not overcome the protections afforded by R.C. 2317.02(B). *Roe*, 2009-Ohio-2973, at ¶ 53. Here, Rose-Mary has not made the threshold showing that information responsive to the discovery requests is privileged. Therefore, *Roe* does not prevent the disclosure of information responsive to the discovery requests at issue in this appeal.

{¶ 35} Rose-Mary has also not shown that the disclosure of any information responsive to the discovery requests at issue would constitute the unauthorized disclosure of protected health information prohibited under HIPAA. "[T]he HIPAA privacy regulation, 45 C.F.R. 164.512, allows disclosure of protected health information in the course of any judicial or administrative proceeding in response to a court order." *Howell*, 2018-Ohio-2054, at ¶ 22 (8th Dist.), citing *Grove*, 2005-Ohio-6914, at ¶ 22 (9th Dist.).

{¶ 36} As this court has previously stated, "[A]n in camera document review for relevancy and privilege is considered the 'best practice.'" *Howell* at ¶ 34, citing *Sessions v. Sloane*, 789 S.E.2d 844, 856 (N.C.App. 2016); *Doe v. Mt. Carmel Health*

*Sys.*, 2004-Ohio-1407 (10th Dist.). However, Rose-Mary failed to establish that an in camera review was necessary because it did not meet its burden of demonstrating that a privilege applied. Rose-Mary's unsupported arguments are insufficient to meet its burden to establish that any information responsive to Camacho's discovery requests was privileged. They have failed to provide the trial court and this court with the necessary information that would allow a ruling in their favor. On the record before this court, the trial court did not err in ordering Rose-Mary to respond to the discovery requests at issue in this appeal.

{¶ 37} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
SEAN C. GALLAGHER, J., CONCUR